## ROSSMOORE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4.

Circuit Court of Appeals, Second Circuit.
April 1, 1935.

Zeiger & Berliner, of New York City (Ephraim Berliner and Joseph J. Zeiger, both of New York City, of counsel), for appellant.

Warren F. Wattles, of Washington, D. C., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayer appeals from an order of the Board of Tax Appeals fixing a deficiency in his income tax for the years 1926 and 1927. The case arises upon precisely the same facts as Rossmoore v. Anderson (C. C. A. 2) 67 F.(2d) 1009, except that it concerns later years. It would be res judicata, had the Commissioner seen fit so to plead; and it is at best only an effort to reargue the same question. Ordinarily we should therefore be content to affirm by a mere reference to our earlier disposition; but as we did not write any opinion and the authorities are in some confusion anyway, it seems better to declare ourselves a little at large. Rossmoore, the taxpayer, was one of a firm of three certified accountants who agreed to dissolve on November 1, 1920, after doing business for less than a year. The firm was to take up no new business, but complete its contracts and collect everything due or to become due. The cash on hand, except a reserve of $5,000, was to be at once distributed, and Rossmoore was "retained" at his own expense to wind up all pending business, under the supervision, however, of the other two. He was to have a salary of $12,-000 as liquidator; it being expected apparently that the winding up would not take more than fourteen months. It did take much longer, so that very substantial sums were distributed among the partners as late as 1926 and 1927. How far these moneys were due at dissolution, and how far they were earned later, does not appear; presumably they were earned later. Two months after the dissolution agreement, that is, on January 3, 1921, Rossmoore conveyed to his wife individually one-third of "the profits and any and all other moneys, advantages, interests and benefits to be derived and realized out of the said partnership business now in liquidation," except

the reserve and his salary. The other two-thirds he also conveyed to her upon various trusts not necessary to set out. Rossmoore's share of the distributions of 1926 and 1927 were paid in accordance with the assignment, one-third to his wife, two-thirds under the limitations of the trust. He did not return them as part of his income and the Commissioner assessed a deficiency against him for this reason. The Board affirmed this and he appealed.

The assignment made the assignee as little a member of the firm as though it had not been dissolved; it made her as little a direct owner of any interest in the firm property; it was no different from an assignment before dissolution. The opposite might indeed be true, if we were to regard the firm as wholly at an end; conceivably it might also be true, at least for tax purposes, if upon dissolution nothing remained to be done but to collect and distribute debts unconditionally due. But this firm took seven years to liquidate, and the business continued and so did the firm; "on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." New York Partnership Law (Consol. Laws N. Y. c. 39) § 61. This was the common law as well. Roby v. American Central Insurance Co., 120 N. Y. 510, 24 N. E. 808. Rossmoore does not indeed argue that his wife became a member of the firm; quite the contrary, his theory is that his interest in it was like that of a shareholder in a company, or a beneficiary in a trust; it was a right against the "firm entity" and assignable as such. Once assigned, any income arising out of it was as little derived through the assignor, or taxable against him, as dividends upon transferred shares or payments upon an assigned equitable interest. This position rests upon the premise of section 52 of the New York Partnership Law, which declares that "a partner's interest in the partnership is his share of the profits and surplus." That was true long before the act was passed. Fourth Nat. Bank v. Carrollton R. R., 11 Wall. 624, 20 L. Ed. 82. It was the consequence of the elaborate system of cross-trusts which the English chancellors had devised in the eighteenth century. Harris v. Commissioner (C. C. A. 2) 39 F.(2d) 546. But our law has never adopted the civil law theory of the firm as a juristic entity; the Uniform Partnership Law as little as any other. That statute recognizes the partners as co-owners ("tenants in partnership") of the "specific" firm property (section 51 N. Y. Partnership Law), and while it is often said, and truly, that the firm is treated at times as if it were an "entity," the doctrine has never become domesticated, and has indeed been at times resisted, when there was considerable excuse for its adoption. Francis v. McNeal, 228 U. S. 895, 33 S. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706. The revenue acts from 1913 forward (38 Stat. p. 166) have consistently retained the common-law view, treating all income of the firm as taxable to the partners, whether distributed or not; and ignoring the firm as a taxpayer except for purposes of information. This is the explanation of Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665, and not, as Rossmoore supposes, because the assignment was of only a part of the husband's interest in the firm. That decision was avowedly a corollary of Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, a case where the husband gave an interest in his future earnings to his wife. Nothing turned upon the form of the transfer, and everything upon the fact that the assignor remained in control of the income, since it was only through his continued efforts that it could be earned. That is equally true though the assignor be a partner and have only an indirect interest in the earnings through his share in the profits; any future earnings which he can assign are conditional upon his continued efforts, and remain in that sense at his disposition. That is the critical factor; the legal scaffolding is of no consequence. At least it is not, unless a corporation be interposed, and then only because the statute makes the corporation the taxpayer, and by means of it expressly insulates the shareholders. It has not so interposed the firm; it has refused to make it a taxpayer.

It must be acknowledged that the cases in the lower courts are not all to be reconciled on the theory we have just mentioned. Were it so, the assignor would never be taxable in cases where the income was already earned at the time of the assignment. Of course if it were not only earned, but already paid though not distributed, no question could arise; it would be firm income and taxable to the partners anyway. Again, though not yet paid, the partners would be taxable if the income were earned and the firm kept its books on an accrual basis. This test we suggested as a possible ex-

522

.planation in Lowery v. Helvering (C. C. A.) 70 F.(2d) 713. The cases do not, however, submit themselves to such a classification. It is true that in Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, 83 A. L. R. 86, Nelson v. Ferguson (C. C. A. 3) 56 F.(2d) 121, and Helvering v. Seatree, 63 App. D. C. 274, 72 F.(2d) 67, the assignor was not taxed when the income had been all earned, though it was not paid at the time of the assignment. But in Bishop v. Commissioner (C. C. A. 7) 54 F.(2d) 298; Parker v. Routzahn (C. C. A. 6) 56 F.(2d) 730 (at least as to a part of the income); Van Meter v. Commissioner (C. C. A. 8) 61 F.(2d) 817; and Daugherty v. Commissioner (C. C. A. 9) 63 F.(2d) 77, where the facts were the same, the result was different. The conflict need not, however, concern us here, for, so far as we have found, it has been uniformly ruled that if the income has not been earned, the assignment will not protect the assignor. It so happens that here the assignor was also the liquidating partner, who must necessarily earn the income; but we would not imply that if either of the other two had made an assignment the result would have been different; perhaps so, perhaps not. In most cases at any rate all the partners concur in the firm activities and can stop them if they will; here for instance Rossmoore was expressly made subject to the others' supervision. There · may be instances, though they must be rare, where one still remains a partner and yet so ties his hands as not to share at all in the. firm activities. That is not the situation here, and we may leave it till it arises.

Order affirmed.