■ B. BERNARD GREIDINGER et al., Respondents-Appellants, v SAMUEL I. HOFFBERG et al., Respondents-Appellants. ARTHUR G. COHEN et al., Appellants-Respondents, and HERTZ, HERSON & COMPANY, Respondents.—Order, Supreme Court, New York County, entered on April 14, 1975, affirmed, without costs and without disbursements. Concur—Kupferman, J. P., Nunez and Lynch, JJ.; Lupiano, J., dissents in part in a memorandum and Capozzoli, J., concurs in the dissenting memorandum in a separate memorandum, as follows: Lupiano, J., (dissenting in part). Plaintiffs B. Bernard Greidinger and Jerry B. Klein commenced an action against defendants Samuel I. Hoffberg, Abraham Oberfest, Henry M. Burger and Stanley G. Berger, hereinafter referred to as HOB&B, and against defendants Arthur G. Cohen and Arthur N. Levien, doing business as Arlen Operating Company, hereinafter referred to as Arlen. HOB&B served an answer and impleaded Hertz, Herson & Company as an additional defendant. Subsequently, the plaintiffs received a release from Arlen and discontinued their action against Arlen. In consequence, defendants HOB&B instituted a separate action wherein they were denominated plaintiffs, against Greidinger, Klein and Arlen. Both actions seek declaratory judgment with respect to the rights of the parties under a lease entered into on December 24, 1969 between Arlen as landlord and a partnership, Greidinger, Hoffberg & Oberfest, as tenant. In essence, a determination of the liability of certain retiring and certain remaining partners of that partnership under the lease was sought. The appeals before this court are as follows: Arlen appeals from an order of Special Term insofar as such order grants a motion by defendants HOB&B for preliminary injunction restraining Arlen from giving notice of intention to terminate the lease dated December 24, 1969 and commencing a summary proceeding for nonpayment of 35% of the rental due. Arlen also complains of the limitation placed upon the undertaking posted by HOB&B under this injunction in the amount of $85,000. Plaintiffs Greidinger and Klein appeal from Special Term's order insofar as it denies their motion for summary judgment against HOB&B in the amount of $16,000 and for a declaratory judgment in plaintiffs' favor. Defendants HOB&B cross-appeal from that portion of Special Term's order which granted the motion of the additional defendant Hertz, Herson & Company for summary judgment dismissing the counterclaim made against Hertz, Herson & Company by said defendants. Scrutiny of the record discloses the following undisputed facts: in December, 1969, Greidinger and Klein formed a partnership with HOB&B, for the practice of accountancy under the firm name of Greidinger, Hoffberg & Oberfest. This partnership entered into a 10-year lease with Arlen as landlord whereby the former was leased 3,692 square feet, being a portion of the 19th floor at 888 Seventh Avenue, Manhattan, New York. The critical clause in said lease at issue herein is paragraph 9.08 which provides: "9.08.

Tenant represents that it is a partnership comprised of the general partners who have executed this Lease. Tenant further represents that the foregoing general partners are all of the partners of said firm and that there are no other partners at the present time. *Tenant represents and agrees that such partners are and shall for all purposes be jointly and severally liable for the keeping, observing and performing of all of the terms, covenants, conditions, provisions and agreements of this lease.* Tenant covenants that it will notify Landlord by registered mail of the admission of any new partner into the firm, and Tenant, and each of the existing partners thereof, further covenant that each newly admitted partner, by virtue of admission into the firm, shall and will assume the liabilities and obligations of the partnership, so that each such newly admitted partner will become liable under this lease as though he had executed the same originally; and Tenant further covenants that upon the request of Landlord, each present and newly admitted partner will execute an agreement, in form and substance reasonably satisfactory to counsel for Landlord assuming joint and several liability for keeping, observing and performing all of the terms, covenants, conditions, provisions and agreements of this lease. Each of such partners consents in advance to, and agrees to be bound by any modification of this lease which may hereafter be made and by any notices, demands, requests or other communications which may hereafter be given by Tenant or by any of the partners comprising Tenant; and all bills, statements, notices, demands, requests or other communications given or rendered to Tenant or to any of the partners comprising Tenant, shall be deemed given or rendered to Tenant and to each of the partners comprising Tenant and shall be binding upon Tenant and each of such partners. *In the event, from time to time, of the death or retirement of one or more partners, written application may be made by Tenant, by such retired partner, or by the estate of any deceased partners, requesting that Landlord release said deceased or retired partner from further liability hereunder. Landlord shall* thereupon *release* said deceased or retired partner or partners from all further liability hereunder; provided, however, that (i) at the time of such release the net worth of the partnership and the personal net worth of *the remaining partners* amounts, in the aggregate, to at least $50,000.00 and (ii) Tenant furnishes Landlord with a certificate to that effect. Neither the release of any such deceased or retired partner or partners, nor anything contained herein, nor any act of Landlord pursuant hereto shall be effective as or shall be deemed a release, in whole or in part, of the liability of the partnership, or of any partner not specifically released in writing, and the partners not released shall continue and remain fully and completely liable for keeping, observing and performing all of the terms, covenants, conditions, provisions and agreements of this lease." (Emphasis supplied.) On September 30, 1971, plaintiffs Greidinger and Klein withdrew from the partnership Greidinger, Hoffberg & Oberfest. This withdrawal was not wrongful because it is clear that the partnership term was indefinite. Section 62 (subd 1, par [b]) of the Partnership Law states: "Dissolution is caused * * * By the express will of any partner when no definite term or particular undertaking is specified". Consequently, dissolution of Greidinger, Hoffberg & Oberfest was effected (see 43 NY Jur, Partnership, § 185). Concomitant with their retiring from Greidinger, Hoffberg & Oberfest, the plaintiffs Greidinger and Klein joined as partners Hertz, Herson & Company. Thereafter, and for a period of approximately 15 months (Nov. 1, 1971–Dec. 31, 1972), Greidinger and Klein or the partnership which they joined, defendant Hertz, Herson & Company, paid 35% of the rental due under the lease between Arlen and the dissolved firm of

Greidinger, Hoffberg & Oberfest, amounting to $16,000. Examination of the record discloses that the landlord continued to direct its rental bills to the dissolved firm up to, and including 1974. After the tenant's dissolution, 65% of the rental due was paid by the remaining partners, to wit, HOB&B. In January, 1973, plaintiffs refused to continue payments of 35% of the rent due under the subject lease and for the first time asserted their rights under said lease to be relieved of this liability. By letter dated December 31, 1972, delivered on or about January 10, 1973, plaintiffs pursuant to paragraph 9.08 of the lease requested Arlen to release them. On February 6, 1973, Arlen released the plaintiffs. "The construction of a plain contract, that is, one which is clear and explicit in its terms, involves only a question of law, and is a matter for the court to determine from the terms themselves" (10 NY Jur, Contracts, § 190). Paragraph 9.08 of the lease is clear and unambiguous. Initially, it is noted that the representation contained therein that the partners "are and shall for all purposes be jointly and severally liable for the keeping, observing and performing of all of the terms * * * of this lease" is for the benefit of the landlord and accords with accepted legal theory as to a partner's liability under partnership law. It is aptly observed that "A partnership 'is an association of two or more persons to carry on as co-owners a business for profit' (Partnership Law, § 10). The partners are jointly liable with respect to their contractual obligations. (§ 26, subd. 2; *Caplan v Caplan*, 268 NY 445; *Gomez v Vasquez*, 177 Misc 874). The creditors upon such obligations may look primarily to the joint property for their satisfaction, but if that is insufficient each of them is liable severally to pay the whole debt out of his individual property. *(Matter of Peck*, 206 NY 55, 60; *People v Knapp*, 206 NY 373.) The rule is grounded in the common law. *(Seligman v Friedlander*, 199 NY 373.) This *individual* liability dates back to the time when the obligations was incurred, and arises *simultaneously* with the joint liability, so that with respect to the ultimate rights of the creditor, in theory of law, the contractual obligation of a partnership is incurred by all and by each. *(People v Knapp, supra*, 382.) 'Upon each partner rests an absolute liability for the whole amount of every debt due from the partnership; (Parsons on Partnership [2 ed], 63); and although originally a joint contract, it may be separate as to its effects * * * Each partner is answerable for the whole, and not merely for his proportionate part' *(Judd L. & S. Oil Co. v Hubbell*, 76 NY 543, 546. See Mechem, Elements of Partnership, § 209)." *(Patrikes v J. C. H. Serv. Stas.*, 180 Misc 917, 924, affd 180 Misc 927, mot for lv to app den 266 App Div 924.) Defendants HOB&B strenuously assert that the term "retirement" or "retired partner" as utilized in paragraph 9.08 of the lease does not include a withdrawing partner. This contention is without merit and an open invitation to the court to make a new contract for the parties under the guise of interpreting the writing. The fact that withdrawal of a partner is clearly included within the term "retirement" may be seen in examining the relevant provisions of New York's Partnership Law (§§ 72, 73, 109). *"Retiring* or outgoing partners are those who cease to be partners in the business, which is carried on by others. They remain liable for obligations incurred by the firm while they were partners" (emphasis supplied) (Crane and Bromberg, Partnership § 24A, p 142). It is beneficial to note that we are concerned with a provision in an agreement, to wit, a lease, made between the partnership (and its partners) on the one hand and the landlord on the other. This agreement is not imbued with and does not partake of the indicia of the written partnership agreement. Patently, paragraph 9.08 of the lease gives the retiring partner(s) the right to make written application

to the landlord requesting that the latter release said partner from further liability under the lease. The landlord *agrees* to furnish such release provided that "(i) at the time of such release the net worth of the partnership and the personal net worth of the *remaining partners* amounts, in the aggregate, to at least $50,000 and (ii) Tenant furnishes Landlord with a certificate to that effect" (emphasis supplied). There is no discretion on the landlord's part to withhold such release and these conditions have been met. Patently, this clause is of benefit to the retiring partner and not to the landlord. Study of the present record discloses that the issue of whether the successor partnership and the personal net worth of the remaining partners (HOB&B) amounts to at least $50,000, is not contested by defendants HOB& B. The mere assertion that the net worth of the remaining partners as evidenced by a tax return indicating a substantial capital position as of January 31, 1972, is not indicative as to the net worth of HOB&B on January 10, 1973 is insufficient. A motion for summary judgment searches the record. Thus, to defeat such motion, a party must bear his proof so that the court may determine the sufficiency of the defense raised *(Holdridge v Town of Burlington,* 32 AD2d 581; *Di Sabato v Soffes,* 9 AD2d 297). Defendants HOB&B also contend that the landlord cannot release the plaintiffs because said defendants by the simple expedient of withholding the certificate evidencing their net worth and that of the partnership can frustrate the right given to the retiring partner(s) to request such release. To state this contention is to refute it. "In every contract there exists an implied covenant of good faith and fair dealing" "between the parties to it * *. * Thus, whenever the cooperation of the promisee is necessary for the performance of the promise there is a condition implied that the cooperation will be given" (10 NY Jur, Contracts, § 203). Since on this record there is no dispute that the net worth of HOB&B and the successor partnership amounts, in the aggregate, to $50,000, the defendants cannot unreasonably withhold such certificate and by so doing, cannot impair the right given to the plaintiffs as retiring partners to be released. To reiterate, "The obligation to use good faith in carrying out what is written underlies all written agreements * * * It is implied that neither party will do anything which will have the effect of destroying or impairing the right of the other party to receive the fruits of the contract" (10 NY Jur, Contracts, § 203). Accordingly, the release given by the landlord Arlen to the plaintiffs pursuant to the latter's request is in compliance with paragraph 9.08 of the lease and must be given effect. The dissolution of Greidinger, Hoffberg & Oberfest does not of itself discharge the existing liability of any partner (Partnership Law, § 67, subd 1). However, the Partnership Law provides: "A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business" (Partnership Law, § 67, subd 2). Paragraph 9.08 of the lease when viewed in the context of this provision of the Partnership Law constitutes a procedure whereby the parties (the retiring partner(s), the landlord as partnership creditor and the person or partnership continuing the business) agreed to the discharge of the retiring partner from existing liability under the lease. Defendants HOB&B filed a certificate of partnership dated May 26, 1972 wherein they certified that as partners of the new partnership Hoffberg, Oberfest & Burger, they are the successors in interest to the dissolved partnership Greidinger, Hoffberg & Oberfest. Subsequently, on

November 30, 1972, this new partnership by Samuel I. Hoffberg executed a renting agency contract whereby Cushman & Wakefield, Inc., was appointed exclusive agent "for the leasing of 3,692 square feet on the 19th floor in 888 Seventh Avenue". This arrangement apparently was unacceptable to Arlen in that it provided for release of the partners of Hoffberg Oberfest & Burger (the remaining partners of Greidinger, Hoffberg & Oberfest). Nevertheless, this renting agency contract is strongly indicative of the fact that Hoffberg, Oberfest & Burger as the successor to the dissolved accounting firm assumed the obligations under the December 24, 1969 lease. As to Hertz, Herson & Company's motion for summary judgment dismissing the counterclaim made against it by HOB&B, Special Term observed: "These additional defendants did not undertake to be responsible for the 35% of the lease rental. They merely paid it for the account of [Greidinger & Klein]". Patently, there was no novation respecting the lease insofar as Hertz, Herson & Company are concerned as Arlen, the landlord, at all times directed its billing toward the tenant named in that lease. Further, any claim that Hertz, Herson & Company sublet a portion of the premises from HOB&B or agree to answer to HOB&B for any obligation on the part of Greidinger and Klein to pay 35% of the rent runs afoul of the Statute of Frauds. There is no writing to substantiate these contentions which would constitute a sufficient predicate for attributing a continuing liability on Hertz, Herson & Company's part to pay 35% of the rent. Liberally construing the counterclaim asserted by HOB&B against Hertz, Herson & Company as envisioned by the liberalized pleading requirement of the CPLR (see CPLR 3013; *Dulberg v Mock,* 1 NY2d 54, 56), it is clear that a claim is also advanced for use and occupation. Section 220 of the Real Property Law provides: "The landlord may recover a reasonable compensation for the use and occupation of real property, by any person, under an agreement, not made by deed; and a parol lease or other agreement may be used as evidence of the amount to which he is entitled." Justice Capozzoli on this matter properly pointed out the relevance of a possible claim of HOB&B for use and occupation. It is clear that insofar as the aforesaid counterclaim asserts such claim for use and occupation against Hertz, Herson & Company, it should not have been dismissed. As to plaintiffs' claim that they are entitled to be reimbursed by HOB&B in the amount of $16,000 (plus interest) representing moneys mistakenly paid by them after dissolution of the partnership as a portion of the rent due under the lease, clearly issues of fact are presented which bar granting summary judgment. "A payment made by reason of an erroneous construction of the terms of a contract * * * was held not to be made under a mistake of fact but under a mistake of law, and if voluntary could not be recovered back" (44 NY Jur, Payment, § 109 citing *Payne v Whiterbee, Sherman & Co.,* 200 NY 572). *Payne v Whiterbee, Sherman & Co. (supra)* states the common law. However, CPLR 3005 and its predecessor (Civil Practice Act, § 112-f [1942]) represent a departure from that rule. CPLR 3005 provides "When relief against a mistake is sought in an action or by way of defense or counterclaim, relief shall not be denied merely because the mistake is one of law rather than one of fact." This section does not purport to grant relief against a mistake of law in all cases. The intent of this section "was to change the existing rule which denies relief merely because the mistake is one of law. Its purpose is not to grant relief in every case of mistake of law or to make the same rules applicable as in the case of mistake of fact. It does afford to the court, however, the power to act in appropriate cases involving a mistake of law" (NY Law Rev Comm'n Rep 29 [1942]). It is well recognized that the

defense of voluntary payment now applies to a payment made under a mistake of law as well as to one made under a mistake of fact (see *Berkshire Knitting Mills v City of New York,* 1 Misc 2d 189, affd 2 AD2d 839, affd 3 NY2d 418). Although pronounced in cases involving tax payments, this defense may have relevance in the instant matter because plaintiffs remained for a time in the leased premises after dissolution of Greidinger, Hoffberg & Oberfest. Indeed, it appears that plaintiffs' as well as Hertz, Herson & Company's names appeared in the building directory in the lobby and on the door to the leased premises, after the afore-mentioned dissolution, at the plaintiffs' behest. These facts may be significant insofar as they bear upon the voluntary aspect of plaintiffs' payments to defendants HOB& B of 35% of the rental and upon said defendants' veiled contention that plaintiffs undertook a separate and independent obligation to pay 35% of the rent. It is beyond cavil that plaintiffs continued to be jointly and severally liable on the rental obligation under the lease until released by the landlord in accordance with paragraph 9.08. At no time, therefore, were defendants HOB&B given any warning that they might have to refund the rental payments given to them and forwarded to the landlord as part of the rental payment due under the lease. Further, equitable issues involving possible change of position and the hardship imposed by repayment may be gleaned from the present record, all mandating denial of summary relief on this portion of plaintiff's action. In its answer to the complaint of defendants HOB&B, the landlord, Arlen, asserts a counterclaim for rent arrears of $44,019.53, the amount allegedly withheld by HOB&B from Arlen since the plaintiffs, Greidinger and Klein retired from the partnership. Counsel fees in the amount of $7,500 are also claimed. In moving for summary judgment on this counterclaim, Arlen proffered documentary evidence in the form of a rent bill showing arrears of $44,019.53 comprised of $32,893.59 denominated as "rent" and $11,165.94 denominated as "retroactive escalation" and cites paragraph 20.02 of the lease as justifying its claim for reasonable counsel fees in collecting or endeavoring to collect the fixed rent or additional rent. In opposition, defendants HOB&B submit an affidavit of Henry M. Burger, sworn to January 13, 1975, wherein he conclusorily asserts in pithy manner "that a portion of the supposed arrears claimed by Arlen constitute 'additional rent' payable because of real estate tax escalation and increments in the consumer price index, and operating expenses. These sums are disputed. Further, a portion of the additional rent claimed by Arlen is retroactively claimed. Some of the retroactive claims antedated Greidinger and Klein's withdrawal from the partnership of Greidinger, Hoffberg & Oberfest." As the liability of the partners of the dissolved firm is, under the lease, joint and several, it is patent that in light of the aforesaid and the circumstances herein, Arlen is entitled to summary judgment for the rent arrears demanded. As already noted, a party to defeat a motion for summary judgment must bear his proof so that the court can determine the sufficiency of the defense raised *(Di Sabato v Soffes, supra).* This, defendants HOB&B have failed to do. However, the lease does not contain paragraph 20.02 alluded to by Arlen and in view of defendants' assertion that there are no provisions in the lease authorizing the award of counsel fees to the landlord under the circumstances herein, this aspect of Arlen's motion must be denied. Accordingly, the order of the Supreme Court, New York County, entered April 14, 1975, should be modified, on the law, with costs and disbursements, by reversing so much of said order as (1) granted the motion by defendants HOB&B for a preliminary injunction, (2) as denied the motion by defendant Arlen for summary judgment in the amount of $44,019.53 constituting rent

arrears, (3) as denied the motion by plaintiffs Greidinger and Klein for summary judgment pursuant to CPLR 3212 against defendants HOB&B for a declaratory judgment, and (4) as granted the motion by Hertz, Herson & Company for summary judgment dismissing the counterclaim made against it by HOB&B insofar as a claim for use and occupation is concerned; the motion by defendants HOB&B for a temporary injunction should be denied, the motion by Arlen for summary judgment in the amount of $44,019.53 against defendants HOB&B should be granted, the motion of plaintiffs for summary judgment should be granted to the extent of declaring their liability under a certain leasing agreement terminated as of the date of the release given by the landlord, Arlen, and the motion by defendant Hertz, Herson & Company for summary judgment dismissing the counterclaim of HOB&B should be denied only insofar as said counterclaim asserts a claim for use and occupation and as thus modified, the order should be affirmed.

Capozzoli, J. (concurring in dissenting opinion). I join Mr. Justice Lupiano in his dissent, with an added comment of my own which is the following. The result reached in the dissent should be without prejudice to any possible claim of Hoffberg, Oberfest, Burger and Berger which they may have against Hertz, Herson & Company for use and occupancy of part of the leased premises from the time that the retiring partners, the plaintiffs herein, stopped paying their share of the rent under the lease.