**EAGLE ASSOCIATES, Appellant,**

v.

**BANK OF MONTREAL, Appellee.**

**No. 646, Docket 90–7707.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 21, 1990.

Decided Feb. 11, 1991.

Jacob Laufer, New York City (Patricia M. Karish, and Laufer & Farkash, New York City, on the brief) for appellant Eagle Associates.

Charles A. Crocco, Jr., New York City (John J. Hasluck, and Lunney & Crocco, New York City, on the brief) for appellee Bank of Montreal.

Before TIMBERS, VAN GRAAFEILAND and WALKER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Eagle Associates ("Eagle"), appeals from a default judgment entered July 7, 1989, in the Southern District of New York, John F. Keenan, District Judge, based on Eagle's failure to appear through counsel as ordered by the district court. The court awarded appellee Bank of Montreal ("Montreal") $401,668.18 on a note issued by Eagle, and dismissed Eagle's counter-claims and cross-claims.

On appeal, Eagle contends that the district court abused its discretion in entering the default judgment.

In this case of first impression in this Court, we hold that the district court did not abuse its discretion.

We affirm.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Eagle, a limited partnership with its principal place of business in New York, was organized for the purpose of acquiring, owning, and promoting the motion picture "Gorky Park". Eagle was composed of two general partners, Howard H. Schuster (Schuster) and Robert R. Bolding (Bolding) and various limited partners. Eagle sold limited partnership interests pursuant to a private placement memorandum. Each limited partner purchased his or her respective interest either by paying cash or by executing a promissory note for the benefit of Eagle (investor notes).

In order to obtain funds necessary to promote the film, Eagle obtained financing from Montreal in the form of three promissory notes (Eagle notes). Pursuant to a provision in the Eagle note agreement, Montreal became the beneficiary of investor notes and letters of credit in the amount equal to the value of the Eagle notes. The Eagle notes were to be paid on May 15, 1984. The note agreement also provided that Eagle would pay all costs and expenses, including the reasonable fees and out-of-pocket expenses of counsel for Montreal in connection with the enforcement of the Eagle notes.

Investors Burton Rayden and Jeffrey Rayden (collectively "the Raydens") jointly owned a limited partnership interest in Eagle. In consideration of that partnership interest, the Raydens executed a note (Rayden note) in the amount of $150,000 which matured on May 15, 1984, the same date as the Eagle notes. The Rayden note was secured by an irrevocable standby letter of credit issued by Mitsui Manufacturers Bank (Mitsui) which expired on July 1, 1984. Pursuant to the Eagle note agreement, Eagle endorsed the Rayden note in blank and delivered it to Montreal.

The Raydens failed to pay their note on May 15, 1984. Montreal then sought payment from Mitsui in New York on June 30, 1984. Mitsui refused to pay pursuant to the letter of credit, claiming that the letter provided that payment was to be made in California. The letter of credit expired on the following day, July 1, 1984. On February 26, 1985, Montreal commenced an action against the Raydens to recover $150,000 plus collection costs resulting from their default. On August 29, 1986, Montreal commenced the instant action against Eagle, and the two general partners, Schuster and Bolding, seeking $150,000 due on the Eagle notes. Judge Leisure consolidated the two cases by an opinion and order dated November 30, 1987. The consolidated case was assigned to Judge Keenan.

On March 22, 1989, the court granted Spengler & Carlson's application to with-

draw as counsel to Eagle, Schuster, and Bolding. In its order granting the application to withdraw, the court instructed Spengler & Carlson to inform their clients that they should "take immediate action to procure new counsel or, if permitted by law, notify the Court of an intention to proceed pro se."

By an order dated May 1, 1989, the court granted Montreal's request to schedule a status conference for June 5, 1989. In its order, the court stated that "at [the time of the conference], the Court will describe the sanctions that may be imposed against a corporate party that does not appear by counsel". On June 5, 1989, the court adjourned the conference until June 19, 1989. At the time of the adjournment, the court instructed Montreal to advise Schuster and Bolding that failure of Eagle to appear on June 19 through an attorney, or failure of Schuster or Bolding to appear through an attorney or *pro se,* would result in a default judgment being entered against them. Montreal complied with the court's order by letter to Eagle dated June 7, 1989. On June 19, neither Eagle, Schuster or Bolding appeared by attorney. Instead, they sent a representative. Although the representative was an attorney, he did not appear in that capacity. The representative informed the court that Eagle would represent itself through Schuster.

By letter dated June 22, 1989, Schuster personally informed the court of his intention that Eagle appear *pro se* through himself and Bolding. Schuster relied on 28 U.S.C. § 1654 (1988) and N.Y. Civ. Prac. L. & R. § 321(a) (McKinney 1990) in support of his contention that a partnership may appear *pro se.* He contended that a "partnership, unlike a corporation, is not in the eyes of the law a legal entity separate and apart from the individuals composing it." Accordingly, he surmised that "a partnership need not be represented by an attorney and may, instead, appear *pro se.*" He enclosed a copy of a notice of appearance, which he filed with the court on June 26, 1989. On July 7, 1989, the court entered a default judgment against Eagle for not appearing by counsel as ordered.

The court scheduled a conference between Montreal and Schuster and Bolding, in their individual capacities, for July 25, 1989. Neither Schuster nor Bolding appeared at the conference. The court scheduled a second conference involving the same parties for August 29, 1989. Again, neither Schuster nor Bolding appeared. On September 12, 1989, the court entered a default judgment against Schuster and Bolding.

On September 27, 1989, Schuster, individually and on behalf of Eagle, moved to set aside the default judgments. Schuster argued that the Eagle judgment should be vacated, since Eagle filed a *pro se* notice of appearance on June 26, 1989. On November 2, 1989, the court entered an order which declined to vacate the default judgments entered against Eagle and Schuster. It held that none of the "excuses [advanced by Schuster were] persuasive and believe[d] that the record [showed] a purposeful and willful disregard of [its] orders."

On November 8, 1989, Schuster wrote the court again requesting that the court vacate the default judgments entered against Eagle and him. A full hearing was held on the matter on November 14. In an order dated November 15, the court again rejected Schuster's argument that he could appear *pro se* on behalf of Eagle. It found that 28 U.S.C. § 1654, which allows parties to plead their cases personally, does not apply to non-individuals.

On appeal, Eagle contends that the district court abused its discretion in entering a default judgment against it.

## II.

■ We review the district court's entry of a default judgment for an abuse of discretion. *Davis v. Musler,* 713 F.2d 907, 912 (2 Cir.1983); *Bourgeois v. El Paso Natural Gas Co.,* 257 F.2d 807 (2 Cir.1958). "Default judgments implicate sharply conflicting policies, and the trial judge, who is usually 'the person most familiar with the circumstances of the case and is in the best position to evaluate the good faith and credibility of the parties', is entrusted with the task of balancing these competing con-

siderations." *Davis, supra,* 713 F.2d at 912 (citations omitted) (quoting 10 Wright, Miller & Kane, Federal Practice & Procedure § 2693 (1983)). We also have emphasized that "the proper disciplining of a party under circumstances of default must usually be left to the control of the trial judge." *Bourgeois, supra,* 257 F.2d at 808. We therefore defer to the decision of the district court unless it is "clearly wrong". *Davis, supra,* 713 F.2d at 912 (citation omitted).

■ With this standard of review in mind, we turn to appellant's claim of error. Eagle contends that the district court abused its discretion since Eagle filed a *pro se* notice of appearance on June 26, 1989. Relying principally on *United States v. Reeves,* 431 F.2d 1187, 1188–89 (9 Cir.1970), Eagle contends that the district court erroneously concluded that a partnership cannot appear *pro se* under 28 U.S.C. § 1654. We disagree.

Section 1654 provides "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." This provision has been interpreted to allow for two types of representation: "that by an attorney admitted to the practice of law by a governmental regulatory body and that by a person representing himself. The statute does not allow for unlicensed laymen to represent anyone else other than themselves." *Turner v. American Bar Ass'n,* 407 F.Supp. 451, 477 (N.D.Tex.1975), *aff'd sub nom. Pilla v. American Bar Ass'n,* 542 F.2d 56 (8 Cir.1976) (appeal from multi-district litigation); *see also McShane v. United States,* 366 F.2d 286 (9 Cir.1966) (individual prohibited from representing anyone other than himself).

Courts also have interpreted this section to preclude a corporation from appearing through a lay representative. *E.g., Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 22 (2 Cir.1983); *In re Victor Publishers, Inc.,* 545 F.2d 285 (1 Cir.1976); *Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County,* 543 F.2d 32

(7 Cir.1976); *United States v. 9.19 Acres of Land, More or Less, in Marquette County, Mich.,* 416 F.2d 1244 (6 Cir.1969) (per curiam); *Simbraw, Inc. v. United States,* 367 F.2d 373 (3 Cir.1966); *Mercu–Ray Indus., Inc. v. Bristol–Myers Co.,* 392 F.Supp. 16, 19 (S.D.N.Y.), *aff'd,* 508 F.2d 837 (2 Cir.1974). *But cf. In re Holliday's Tax Services, Inc.,* 417 F.Supp. 182, 185 (E.D.N.Y.1976) (sole shareholder of corporation in Chapter XI permitted to proceed *pro se* ), *aff'd mem.,* 614 F.2d 1287 (2 Cir. 1979). Courts which have refused to allow corporations to appear *pro se* have recognized that "[a] corporation is an artificial entity which can act only through agents." *Holliday's, supra,* 417 F.Supp. at 183 (citing 9 Fletcher on Corporations § 4463 (1931, Cum.Supp.1975)); *see also Brandstein v. White Lamps, Inc.,* 20 F.Supp. 369, 370 (S.D.N.Y.1937) ("While a corporation is a legal entity, it is also an artificial one, existing only in the contemplation of the law; it can do no act, except through its agents.") Accordingly, we long have required corporations to appear through a special agent, the licensed attorney. *Jones, supra,* 722 F.2d at 22; *Holliday's, supra,* 417 F.Supp. at 183; *see also Brandstein, supra,* 20 F.Supp. at 370 ("Since a corporation can appear only through its agents, they must be acceptable to the court; attorneys at law, who have been admitted to practice, are officers of the court and subject to its control."). We previously have articulated the rationale behind this requirement:

"the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, e.g., to avoid litigating unfounded or vexatious claims."

*Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 22 (2 Cir.1983).

Courts that have considered the question of whether other types of organizations may appear through a lay representative are not in complete agreement. *Compare United States v. Reeves,* 431 F.2d 1187 (9 Cir.1970) (partnership has a right to appear *pro se* ) *with First Amendment Foundation v. Village of Brookfield,* 575 F.Supp. 1207, 1207 (N.D.Ill.1983) (partnership must be represented by attorney admitted to practice); and *Move Organization v. United States Department of Justice,* 555 F.Supp. 684, 692–93 (E.D.Pa.1983) (organization cannot appear *pro se* ) and *Turner, supra,* 407 F.Supp. at 476 (association has no right to have lay assistance under 28 U.S.C. § 1654). Consistent with the many courts that have considered whether corporations can appear through a lay representative, the court in *Turner* concluded: "[c]orporations and partnerships, [both of which are fictional persons], are unable to represent themselves and the consistent interpretation of § 1654 is that the only proper representative of a corporation or partnership is a licensed attorney, not an unlicensed layman regardless of how close his association with the partnership or corporation." *Turner, supra,* 407 F.Supp. at 476.

On a prior occasion, we quoted this language from *Turner* with approval in denying a chief executive officer's bid to appear for a corporation. *Phillips v. Tobin,* 548 F.2d 408, 411 (2 Cir.1976). Since *Phillips* involved a *pro se* litigant's right to appear for a corporation, the quoted language is dicta on the question of whether a partnership may appear through a layperson. Having examined the language of 28 U.S.C. § 1654 and the numerous cases decided thereunder, however, we are unable to perceive a palpable difference between the situation where a layperson is representing others having an interest in a corporation and the instant situation where a layperson wishes to represent other partners, general and limited.

Eagle directs our attention to the Ninth Circuit's decision in *Reeves* to support its contention that, unlike a corporation, a partnership may appear through a layperson. In *Reeves,* the court held that, since the Alaska partnership statute provides that each partner has a specific right in partnership property, "[i]t follows that, ... [appellant-partner], as a member of that partnership, was pleading his own case." *Reeves, supra,* 431 F.2d at 1188. Based upon that reasoning, the court permitted the partnership to be represented by a lay partner. *Id.*

We are not persuaded by the reasoning and conclusions advanced in *Reeves* and its holding appears to conflict with other pronouncements in that circuit. *E.g., Church of the New Testament v. United States,* 783 F.2d 771, 773–74 (9 Cir.1986) (unincorporated associations cannot be represented by laypersons); *McShane, supra,* 366 F.2d at 288 (laypersons may not represent other litigants); *Russell v. United States,* 308 F.2d 78, 79 (9 Cir.1962) (per curiam) (same). Furthermore, we agree with Judge (now Justice) Souter's critical characterization of the *Reeves* decision in *State of New Hampshire v. Settle,* 129 N.H. 171, 523 A.2d 124 (1987). The court in that case addressed the issue of whether an unincorporated association could be represented by a non-attorney officer. In concluding that a lay person could not represent the association, Judge Souter rejected the reasoning of the *Reeves* court:

"[T]he Ninth Circuit construed the provision of 28 U.S.C. § 1654, allowing personal appearance by a party, to permit a lay partner to appear on behalf of a partnership. Although the court reasoned that in representing the partnership he was representing his own interest, this begs the relevant question, which is whether the partner was representing any one else at the same time. Because he was necessarily representing the other partners as well, the *Reeves* court was mistaken in its implicit conclusion that the one partner's appearance effected nothing more than personal representation. *Reeves* was analytical sport, without persuasive claim to be followed."

129 N.H. at 178, 523 A.2d at 129 (citations omitted).

As Judge Souter emphasized, when one partner appears on behalf of the partner-

ship, he is representing more than just himself. In the instant case, that situation is magnified. Not only is Schuster representing other partners, general and limited, but his interests may be incongruous with those partners. Moreover, the record fails to demonstrate that Schuster was authorized to appear for the partnership. To permit Schuster to appear on behalf of the partnership would violate § 1654's edict which permits only "parties ... [to] conduct their own cases". We hold that the district court properly prohibited the partnership from appearing through Schuster, a layperson.

■ Having determined that the district court properly ordered Eagle to appear through counsel, it was appropriate to enter a default judgment when Eagle willfully disregarded the district court's order. The court was confronted by a recalcitrant party who failed to comply with its order to obtain counsel. "Such cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise defend as provided by these rules.'" *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2 Cir.1967) (per curiam) (appropriate to enter default judgment where, contrary to a district court order, corporation refused to appear through an attorney). We hold that the district court did not abuse its discretion in entering a default judgment against Eagle.

### III.

To summarize:

We hold that 28 U.S.C. § 1654 prohibits a layperson from appearing on behalf of a partnership. Since Eagle failed to comply with the district court's order directing it to appear with counsel, the district court did not abuse its discretion in entering a default judgment.

Affirmed.

**VAN GRAAFEILAND,** Circuit Judge, concurring on separate grounds:

I concur in my colleagues' holding that the judgment of the district court should be affirmed. However, I base my concur-

rence upon the failure of the three named defendants, Eagle Associates and its two general partners Howard R. Schuster and Robert R. Bolding, to comply with the district judge's orders to attend pretrial conferences. I respectfully disagree with my colleagues' holding that one of two general partners, sued with the partnership on a contract indebtedness, cannot represent the defendant partnership as well as himself in court.

Many years ago, in an opinion written by the eminent Learned Hand, we said that "our law has never adopted the civil law theory of the firm as a juristic entity; the Uniform Partnership Law as little as any other." *Rossmoore v. Commissioner*, 76 F.2d 520, 521 (2d Cir.1935). That was the law of New York when *Rossmoore* was written. *See Caplan v. Caplan*, 268 N.Y. 445, 447, 198 N.E. 23 (1935); *Matter of Peck*, 206 N.Y. 55, 60, 99 N.E. 258 (1912). Except for a few especially prescribed statutory exceptions such as C.P.L.R. § 1025, it is still the law of New York. *See Golia v. Health Ins. Plan of Greater New York*, 6 A.D.2d 884, 885, 177 N.Y.S.2d 550 (1958), *aff'd*, 7 N.Y.2d 931, 197 N.Y.S.2d 735, 165 N.E.2d 578 (1960) (mem.); *Chemical Bank of Rochester v. Ashenburg*, 94 Misc.2d 64, 67, 405 N.Y.S.2d 175 (1978). In short, partnerships and corporations were, and continue to be, "distinctly different organizational forms." *See People v. Zinke*, 76 N.Y.2d 8, 14, 556 N.Y.S.2d 11, 555 N.E.2d 263 (1990). We have recognized this to be so in numerous cases involving diversity of citizenship. *See, e.g., Lewis v. Odell*, 503 F.2d 445 (2d Cir.1974).

This conclusion, I suggest, follows from the very nature of a partnership. "When a partnership is established, the liability of the individual partners is an incident of the partnership, merely, not a separate and independent liability." *Hartigan v. Casualty Co. of Am.*, 227 N.Y. 175, 178, 124 N.E. 789 (1919). Unlike corporate shareholders or association members, partners are jointly liable with respect to their contractual obligations; *i.e.*, "each partner is liable for the whole amount of every debt of the partnership, not merely for a propor-

tionate part." *Midwood Dev. Corp. v. K 12th Assocs.*, 146 A.D.2d 754, 755, 537 N.Y. S.2d 237 (1989) (mem.); *Greidinger v. Hoffberg*, 49 A.D.2d 549, 551, 370 N.Y.S.2d 934 (1975) (mem.) Because a loan to a partnership is made to all and each of the partners, creditors "may select any partner and collect their claims wholly from the property of that partner." *People v. Knapp*, 206 N.Y. 373, 382, 99 N.E. 841 (1912).

Where, as here, the liabilities of the partnership and one of its codefendant members are coterminous, the individual partners, whose personal liability is at stake, should be permitted to represent their identical interests in court. *See* N.Y.Civ.Prac. L. & R. § 321 and Fed.R.Civ.P. 17(b).