Rockingham
No. 86-005
No. 86-255

TOWN OF NOTTINGHAM

v.

ROBERT A. BONSER AND CEDAR WATERS VILLAGE, INC.

December 9, 1988

*Engel & Gearreald,* of Exeter (*Mark S. Gearreald* on the brief and orally), for the plaintiff.

*Thomas C. Dunnington, Jr.,* of Dover, by brief and orally, for Cedar Waters Village, Inc.

*Robert A. Bonser,* by brief and orally, *pro se.*

SOUTER, J. The Superior Court (*Nadeau,* J.) ordered the defendants to reimburse the plaintiff for attorney's fees incurred in seeking to enforce an order enjoining zoning violations and, in a separate proceeding, held the defendants in civil contempt for violating the original injunction. The defendants have appealed in each instance, although the corporate defendant has defaulted in the appeal from the fee award. We affirm each order.

More than seven years have passed since the events first giving rise to this litigation, which has required frequent and protracted appearances before the superior court, numerous orders by this court, proceedings in the United States District Court and the Court of Appeals for the First Circuit, and the prior appeal and opinion *sub nom Bonser v. Courtney,* 124 N.H. 796, 481 A.2d 524 (1984), from which we will summarize the facts through the spring of 1984. At all relevant times, the defendant Cedar Waters Village, Inc. has owned a tract of some 350 acres in the town of Nottingham, having received the land by conveyance from the defendant Robert A. Bonser and his wife. Bonser is the corporation's principal officer and stockholder.

In 1981, Bonser and the corporation caused or allowed six mobile homes to be placed on the land for residential use in violation of the town's zoning ordinance, which required conformance with regulations of the town planning board. The regulations, in turn, treated the use of the land for mobile home sites as a subdivision, for which the planning board's approval was necessary. *Bonser v. Courtney, supra* at 800, 481 A.2d at 525. The defendants failed to

obtain or even apply for the requisite approvals, because of Bonser's belief that zoning regulation is a *per se* unconstitutional limitation on his property rights. Consistently with this position, he and Cedar Waters refused the town's demand for removal of the unapproved mobile homes, whereupon the town petitioned the superior court for an injunction against placing any further mobile homes on the tract and for an order to remove the six already there.

Disposition of the injunction petition was complicated by Bonser's insistence on representation by lay counsel and by his claim of constitutional entitlement to jury trial in the equity proceedings, which led the Superior Court (*Dalianis,* J.) to offer to empanel an advisory jury to recommend resolution of any disputed issue of fact that Bonser might identify. He identified none, and on June 10, 1982, Contas, J., enjoined the defendants from using the mobile homes pending compliance with the town's regulations and ordinances no later than September 1, 1982. The injunction provided that if the defendants failed to comply by that date, they would become subject to an order to remove the homes, and upon their failure to do so the town would then be authorized to remove the structures at the defendants' expense. *Bonser, supra* at 803, 481 A.2d at 527.

The defendants did nothing, the town apparently declined to exercise the judicially-authorized self-help, and hearings on a further petition brought by the town to require the defendants to take action elicited little more than additional expressions of Bonser's constitutional views. In November, 1982, Wyman, J., found Bonser in civil contempt and, *inter alia,* levied a fine for each day Bonser should remain so. In February, 1983, Dalianis, J., affirmed the November order and once again authorized the town to remove the mobile homes if the defendants had not done so by March 31, 1983.

On March 17, 1983, the town petitioned for Bonser's commitment to the county jail for contempt in having refused to pay the accumulating fines. At a hearing before Douglas, J., in April, 1983, the court determined that Bonser had the means to pay the fines for civil contempt, calculated their accrued total at $7,150 and committed him to jail until he should purge himself of the continuing contempt of court. In May, 1983, Bonser refused before Bean, J., to comply with the outstanding orders; and in June, Temple, J., denied his petition for habeas corpus, but released him on bail pending his intended appeal. *Bonser,* 124 N.H. at 807, 481 A.2d at 530.

This court accepted the appeal and held that Bonser's opportunity to attack the merits of the original injunction of June 1982, and to litigate his constitutional objection to zoning and demand for jury trial, had been limited to a direct appeal from the 1982 order, which he had not taken. *Bonser*, 124 N.H. at 810, 481 A.2d at 532. Although the court did entertain Bonser's collateral attack on the contempt finding itself as having been tainted by the failure to provide a jury trial, that issue was resolved against him, *id.*, and the habeas appeal was otherwise limited to examining and affirming the trial court's personal and subject matter jurisdiction in the contempt proceeding. *Bonser*, 124 N.H. at 807–10, 481 A.2d at 530–32.

The court observed that Bonser had no grounds for pleading ignorance of judicial procedures for directly appealing those issues he had raised during the original injunction proceeding, and which he continued to insist on litigating collaterally. Not only had the superior court expressly advised him and his chosen lay counsel of the steps required to appeal the June 1982 order, but he had had the benefit of his own prior experience in appealing an earlier zoning action, *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978). *Bonser*, 124 N.H. at 811, 481 A.2d at 533. The court also took notice of the "veritable avalanche of motions, countermotions, and special appearances" that had been filed by Bonser and his lay counsel.

Much the same language might be used to allude to developments during the more than four and one-half years that have now elapsed since the habeas proceeding was concluded. The record before us indicates that the violation continues, the defendants remain in contempt, and the litigation, though eventful, has eluded resolution. Specifically, our earlier opinion was followed in the superior court by proceedings initiated by the town to attach and execute upon Bonser's bail money to secure payment of accrued monetary penalties, and by Bonser's motion to stay his surrender for reincarceration, his motion for new trial, motion for declaratory judgment, motion for dissolution of the original injunction, and motion for reconsideration of the superior court's various orders in response to preceding motions. Two further notices of appeal filed in this court resulted in affirmances of various trial court rulings rendered by Temple, J., Gray, J., and Nadeau, J. *See* unpublished orders dated May 24, 1985, in No. 85-075 and August 8, 1985, in No. 85-213, the former explaining at some length why Bonser's attempts to relitigate the merits of his various claims were barred by his failures to appeal rulings when he had had the opportunity

to do so. Although the defendants were represented by a lawyer for at least some of the time consumed by these proceedings, our own files show that during this period Bonser was again represented by lay counsel in the person of his son, who appeared for him and communicated on his behalf as an "associate member" of the "New Hampshire Civil Rights Association," *see State v. Settle,* 129 N.H. 171, 174, 523 A.2d 124, 126 (1987), using stationery bearing the name of Joseph S. Haas as an officer of the association, *see generally State (Haas Complainant) v. Rollins,* 129 N.H. 684, 533 A.2d 331 (1987).

In the meantime, on March 1, 1985, Bonser had been remanded to the custody of the sheriff for further commitment as a result of the continuing civil contempt. Nadeau, J., reviewed the commitment in April and thereafter issued several orders for Bonser's temporary release to explore possibilities of compromise with the town selectmen. No compromise was reached, but at a hearing on May 23, 1985, Nadeau, J., issued the following new order *sua sponte:*

> "[Bonser] is to be released from custody [in the Rockingham County House of Correction], forgiven all monetary penalties to date, and purged of contempt upon certification in writing, under oath, . . . within 30 days . . . that he has done one of the following:
>
> 1. Made official application, without equivocation, to the appropriate agencies of the Town of Nottingham, for all permits and approvals required by existing ordinances to allow the location of mobile homes on the defendants' land, or
>
> 2. Caused to be removed from the land all mobile homes for which he possesses no such permits and approvals, or
>
> 3. Paid to the Town of Nottingham the sum of $38,550 representing civil monetary penalties from November 26, 1982, to date.
>
> If the defendant decides to act under Section 1 of this paragraph, he must pursue diligently, and complete the official application process and conform to all existing laws and ordinances governing the location of mobile homes on his land."

The judge explained from the bench that "[b]y virtue of this order, Robert Bonser receives one last chance to absolve himself of all contempt charges and financial loss by applying for the permits or removing the mobile homes."

Each party filed exceptions to the order, but on May 28, 1985, Bonser's son filed a written notice that his father would avail himself of the first option, a decision that Bonser confirmed by letter of that date to town counsel, in which he stated that

> "I give you my word that I will pursue the applications dilligently [sic] and complete the official application process and conform to all existing laws and ordinances governing the location of mobile homes on my land, pursuant to the . . . Court's order. . . ."

Only the town objected to the order strongly enough to bring an appeal, which we declined to accept on October 3, 1985. See No. 85-279.

Bonser's release from confinement on May 23 was followed by two developments that have led to the appeal now before us. The first began with the town's motion of June 3, 1985, seeking an award against the defendants of $25,000 in attorney's fees. Nadeau, J., deferred action on this until "expiration of appeal period or final judgment following decision of the New Hampshire Supreme Court," which language apparently referred to possible appeals from the May 23 order. On December 10, 1985, Nadeau, J., found that the defendants' refusal to comply with the June 10, 1982 orders had been "obstinate, vexatious and oppressive," and he awarded fees of $13,873.40 with respect to the period August 12, 1982, through November 27, 1985. Although both defendants appealed that award, the corporation defaulted by failing to appear through counsel licensed to practice law, see State v. Settle, supra at 173, 523 A.2d at 125–26, and it is only Bonser's challenge that is before us now.

The second line of development falls under the rubric of Bonser's efforts to "complete the official application process and conform to all existing laws and ordinances governing the location of mobile homes on [the] land." The first such effort actually came from the town, when its counsel wrote to Bonser on June 14, 1985, enclosing copies of the zoning ordinance, building code, and subdivision rules, and application forms for building permits, subdivision approval and a special exception from zoning requirements to allow open space development. The selectmen met with Bonser on July 9 to help him complete the applications, and the town's lawyer wrote

again on July 22 to remind him that he had not as yet submitted anything.

On July 29 Bonser filed applications for nine building permits, "signed under compulsion of court order," and an application for special exception, "signed under compulsion of court." This application, however, failed to include required frontage and lot line measurements for the property involved, and made no required reference to the provision of the zoning ordinance on which the application was based, instead claiming only a constitutional entitlement to continue to use the land for a mobile home park. Finally, Bonser submitted a subdivision application, also "signed under compulsion of court order," in which he failed to identify the land, as requested, either by "Tax Plan No." or "Lot No.," and to which he failed to attach, as requested, either a title opinion "from a duly licensed attorney as to the existence or non-existence of any encumbrances" or a "preliminary layout." Bonser claimed that such a layout was "already on file with town and [county registry] of deeds."

Counsel for the town advised Bonser by letter on August 13 that the applications were incomplete. Bonser replied on September 14 that his health then prevented him from attending to such matters. After Bonser had been observed as a spectator at several judicial proceedings in October and November, however, having done nothing more to complete the applications, the town moved on December 2, 1985, for a further finding of contempt.

After the superior court had scheduled the motion for hearing, Bonser submitted an "open letter" to the town, its counsel and the superior court, again raising his objections to zoning and repeating his claim of entitlement to jury trial in the town's equity proceeding for enforcement of the local ordinances. With the copy of the letter sent to town counsel, Bonser enclosed, *inter alia*, copies of septic system plans for seven of the nine lots, a commercial well water analysis of a sample "brought in by: Cedar Waters Village, Inc.," and three surveyor's plans, only one of which identified the surveyor who had prepared the plan, and none of which bore a surveyor's seal. One plan showed an outline of the Cedar Waters tract, one showed a portion of that outline consisting of some unmeasured road frontage and four boundary courses, and one showed lot lines for "Cedar Waters Village." The last plan was given no location by reference to the entire tract shown in the first plan, and showed two separate series of lots consecutively numbered 7, 9, 11, 13.

Town counsel forwarded the material to the planning board and asked the court to defer action on the motion for further contempt until after a planning board meeting scheduled to review Bonser's application. The court granted the continuance. Counsel also wrote to Bonser notifying him of the scheduled planning board meeting, advising him that under the subdivision regulations both preliminary and final plans must bear the seal of a registered land surveyor, and requesting Bonser's representation at the meeting either personally or by a registered surveyor.

On the same day that counsel wrote to Bonser, the latter issued an "objection to jurisdiction (by feudal tenure) of property of declarant, by city/town agents or agencies under 'color of law' and 'affidavit of declaration of rights.'" This document appeared to be directed to the "Planning/Zoning/Selectmen/etc. [of] Nottingham[,] N.H." and concluded with the demand that "said agency shall 'cease and desist' from any further harassment of the declarant, and his fundamental rights of all property herein, and the 'liberty' to use the same."

Neither Bonser nor a surveyor appeared at the scheduled planning board meeting on January 22, 1986. The transcript of that hearing indicates that the board members could not identify the exact location of the lots for which Bonser sought subdivision approval by reference to the applications and plans submitted. When a board member asked whether Bonser had sent a representative, one John Settle responded, *see State v. Settle*, 129 N.H. 171, 523 A.2d 124, who described himself as vice-president of the corporation authorized only to "get . . . what you need in a list form to further these papers." Settle was referred to a checklist of required materials, contained in the most recently amended planning board regulations, and he was expressly advised of the requirement that plans be prepared and stamped by a registered land surveyor. The chairperson of the board specifically cited Settle to the statement of that requirement in § V, A., 1., as contained in both the subdivision regulations as amended in March of 1975 (the Regulations) and a later version as amended in November of 1985 (the Amended Regulations). The chairperson advised Settle that it probably would be easiest for everyone if a surveyor followed the checklist and prepared the further materials for submission. She said she would be willing to talk with the surveyor, as would the town road agent.

Bonser's response came in a letter to the planning board, on stationery of Cedar Waters Village headed by the motto, "Grin & Bare It." He stated that the copies he enclosed of "certain

Registered Land Surveyor's drawings" would "negate the need for a Suveyor [sic] to meet with you personally." After protesting that the town subdivision regulations had no application to "rental property" and threatening further litigation if his applications were disapproved, he concluded that "if there is anything further you require in the way of paperwork, I really must insist that you describe it specifically and in detail in a letter . . . ." The material Bonser enclosed consisted of copies of certificates of the State Water Supply and Pollution Control Commission approving septic systems for five of the nine lots for which he had sought building permits, together with copies of a small plan showing a portion of the boundary of Cedar Waters land, a correction to another plan, and a small fragment of a third plan, showing a surveyor's seal at its corner.

The chairperson of the planning board wrote to Bonser on February 27, 1986, stating that the applications were still incomplete. She explained that the board could not very readily process applications by mail and asked for some personal contact with a representative of the corporation. She notified Bonser of a further meeting set for March 26 and suggested that a surveyor communicate with her before that meeting to "discuss details of the necessary submissions."

No one attended the meeting on the corporation's behalf, and the defendants' only subsequent communication with the chairperson was a letter from Bonser, received two days after the meeting, advising that he would not attend because he did "not recognize the planning board as having any authority to violate [his] Constitutional Rights." He claimed that he had supplied all that the town "could logically need," he stated that anything Mr. Settle had said "means nothing," and he enclosed copies of the State and National Constitutions.

The town then requested a hearing on its pending motion for further contempt, which was held on May 16, 1986. On May 21, Nadeau, J., made the following findings and order:

> "I find from the evidence produced at the last hearing, that the Defendants have not pursued diligently and completely the official application process, nor have they conformed to all existing laws and ordinances governing the location of mobile homes on the land in question. I find specifically:
> 1. The Defendants failed to appear at Planning Board Meetings and present and discuss their proposals.

2. The Defendants failed to provide current engineering plans showing the specific locations of mobile homes, septic systems and other land characteristics.

3. They failed to complete the application process.

4. They have engaged in conduct designed to confuse and delay consideration and action by the Planning Board.

. . . .

I find the Defendants' conduct to be in contempt of prior Court orders and, specifically, in contempt of the Court order dated May 23rd, 1985 and accordingly enter the following order:

1. Within seven (7) days of the date of this order, the Defendants shall remove from their property the mobile homes in question.

2. I find that previous civil penalties imposed in the past have been ineffective to achieve compliance with the law and Court orders; and for that reason, after seven (7) days from the date of this order, a civil penalty of $1,000.00 per day is assessed against the Defendants, jointly, for each day any such mobile home remains on the property.

3. If after seven (7) days from the date of this order, the Defendants have failed to remove all mobile homes, the Town is authorized to take whatever steps are reasonably necessary to begin and complete removal of the mobile homes, including any reasonable force required. All costs of the removal shall be assessed against the Defendants.

. . . .

5. After removal of all mobile homes in question, the Town shall certify to the Court, in affidavit form, the civil penalties which accrued under Paragraph No. 1 of this order and the costs which were incurred under Paragraphs No. 2 and No. 3. Upon approval of those amounts by the Court, the Clerk of the Rockingham County Superior Court shall forthwith enter civil judgment against the Defendants in favor of the Town of Nottingham and, at the request of the Town, shall forthwith issue an execution.

"The Court will not entertain any motion for reconsideration, modification or stay of this order unless both parties join in the request or unless directed by the New Hampshire Supreme Court. The time limit set forth in this order will not be interrupted by the filing of an appeal, pleading, motion or document, or other paper by either party except by order of the New Hampshire Supreme Court."

The defendants' appeal of this order has been consolidated with Bonser's appeal of the preceding award of counsel fees.

Although the notice of this second appeal was filed in June, 1986, some twenty-two months were to elapse before this court issued a final order scheduling briefing and argument of the two appeals as consolidated. The time was consumed by collateral proceedings involving three issues: the right of lay counsel to represent the corporation; the propriety of defaulting the defendants for failure to pay costs of transcript preparation within the time allowed; and Bonser's demand for the retroactive recusal of Nadeau, J., which would have had the effect of vacating the two orders under appeal. Despite reluctance to extend this already lengthy procedural history, we should render some account of these matters, given the potential consequences to the defendant of the contempt that continued while the issues were resolved.

We have referred before to *State v. Settle*, 129 N.H. 171, 523 A.2d 124, which concerned the proclivity of its named defendant to practice law without a license. It was in part because of Settle's appearance on behalf of the corporate defendant in the case now before us that the State, in effect, moved to appeal a superior court order allowing Settle to represent a corporation of which he was an officer or director. *Id.* at 173, 523 A.2d at 125. In view of the number of Settle's appearances for such corporations, we accepted the appeal and stayed the processing of other appeals in which Settle had thus appeared as lay counsel. Our orders staying action in the two appeals now before us, however, expressly provided that we did not stay enforcement of the superior court orders under appeal. The contempt, if contempt it was, therefore continued in the interim subject to the civil sanctions ordered by the trial court. Despite this fact, the corporation did not see fit to substitute counsel in order to avoid the delay, and the present appeals rested until the decision in *State v. Settle supra* eight months later, in March, 1987, at which time Settle's appearances for the corporation were stricken in accordance with our opinion.

As we indicated above, the corporation then failed to procure new counsel within the time allowed in the appeal from the counsel fee award. The failure to do so resulted in default as against the corporation, but the two appeals otherwise went forward, until the following July.

In July, 1987, the records of this court indicated that the defendants had failed to advance the estimated cost of transcript preparation in the appeal from the contempt finding of May 21, 1986, and an order was accordingly issued deeming the appeal to be waived. This was followed by a motion to reconsider on the ground that the defendants had never received notice of our prior order requiring payment for transcript preparation. Since this motion turned on a factual issue, we referred it to Bois, J., as a special master, for evidentiary hearing and recommendation.

In October, 1987, before any hearing had been held, Bonser filed an original motion in this court seeking summary reversal of all orders previously issued by Nadeau, J., on the ground that the judge should have recused himself because of a conflict of interest derived from his uncle's position as an officer of the corporation and as its counsel. Factual issues thus raised were also referred to Bois, J.

In February, 1988, Justice Bois reported findings to the court, on the basis of which we reinstated the appeal from the contempt finding of May 21, 1986, but refused to require the recusal of Nadeau, J., with respect to any period prior to Bonser's first request to that effect. *See* unpublished order in No. 86-005 and No. 86-255 (when party knowing of grounds for judge's disqualification delays in filing request therefor, recusal need not be granted as to period prior to request).

After preparation of the transcript, briefing orders were issued, and the consolidated appeals were argued in September, 1988. We begin our consideration of them with the appeal from the fee award.

Bonser claims the award of attorney's fees is inconsistent with the court's order of May 23, 1985, affording the defendants a final opportunity to purge themselves of contempt, as well as erroneous under the general standard governing such fee awards. With respect to the May 23 order, the town and the trial court have taken the position that the "monetary penalties" from which the defendants were offered forgiveness did not include counsel fees, so that the court was entirely free to entertain the town's motion for such fees filed only two days after Bonser had indicated he

would accept the court's offer of release from jail upon undertaking to comply with the town's ordinances and regulations.

■ The town's position might be at least an arguable one, were it not for the court's further statement delivered with the May 23 order, that by "virtue of this order, Robert Bonser receives one last chance to absolve himself of all contempt charges and financial loss . . . ." "[A]ll . . . financial loss" is an unequivocal phrase, and absolution from all financial loss is not reconcilable with a requirement to pay thirteen thousand dollars in counsel fees. The only reasonable reading of the order as a whole, therefore, supports Bonser's position that if he has purged himself of contempt by satisfying the terms of the May 23 order he should be free of any award of counsel fees. Conversely, of course, if the trial court correctly found that Bonser failed in his undertaking to honor the terms of the May 23 order, there is no bar to the fee award.

■■ The same may be said on considering the propriety of the fee award under the general standard expressed in *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), and its progeny. On the assumption that the trial court was correct in subsequently finding that on the date of the fee award Bonser had failed to purge himself of contempt, the propriety of the award under the general standard is too obvious to require extended discussion. Over ten years ago this court clearly enunciated the rule that a court of equity can require a party to pay his opponent's counsel fees when he has prolonged litigation "through bad faith or obstinate, unjust, vexatious, wanton or oppressive conduct." *Id.* at 688, 377 A.2d at 617. That rule was explained and affirmed in *Indian Head National Bank v. Corey*, 129 N.H. 83, 523 A.2d 70 (1986), and was most recently generalized in *Keenan v. Fearon*, 130 N.H. 494, 501–02, 543 A.2d 1379, 1383–84 (1988), where we explained that a constitutionally created court in this State is empowered to award fees "in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be." *Id.* at 502, 543 A.2d at 1383.

■ As our statement of facts indicates, the record shows that Bonser has persisted in a course of contumacious action, as unreasonable in law as it has been in fact, that began on the date of the superior court's original injunction in June of 1982. As of the date of the fee award, Bonser had persistently refused to comply with the order, and for three and one-half years he had repeatedly attempted to relitigate what he had consistently failed to appeal.

There is therefore no question about the appropriateness of awarding fees as equitable compensation, provided that the trial court rightly found that Bonser remained in contempt through the period covered by the fee award.

We therefore turn now to that central issue and explain why we affirm the trial court's finding that the defendants continued to maintain their contemptuous posture. The first option listed in the order of May 23 was conditioned on Bonser's application to the appropriate town agencies for "all permits and approvals required by existing ordinances to allow the location of mobile homes on the defendants' land. . . ." The trial court made it plain that "[i]f the defendant decides to . . . [make the appropriate applications], he must pursue diligently, and complete the official application process . . . ." In its findings of May 21, 1986, the court found, *inter alia,* that the defendants had never completed the application process, in that they "failed to provide current engineering plans showing the specific locations of mobile homes, septic systems and other land characteristics." The record supports these findings.

The town's subdivision regulations, as in effect throughout this litigation, define a "subdivision" for which the planning board's approval must be obtained as "the division of a . . . tract . . . of land into two or more lots . . . for the purpose . . . of sale or of building development." REGULATIONS § II, D.; AMENDED REGULATIONS § II, D. (The latter regulation further provides expressly for its application to rental property, a conclusion reached by the trial court prior to the amendment as the basis for the original injunction of June 10, 1982.) For the subdivision consisting of the lots to be leased for building development in the form of mobile homes, the defendants were obligated to apply for approval by submitting a "preliminary plat" drawn to scale, REGULATIONS § V, A.; AMENDED REGULATIONS § V, A., bearing a survey date and stamp or seal of a registered New Hampshire land surveyor, REGULATIONS § V, A.1.; AMENDED REGULATIONS § V, A.1., and showing, *inter alia,* contour lines, REGULATIONS § V, A.3.; AMENDED REGULATIONS § V, A.3., and proposed facilities for sewage disposal, REGULATIONS § V, A.5.; AMENDED REGULATIONS § V, A.7.

The evidence indicates that none of these requirements was satisfied. There was no single preliminary plat, and the scales on the various plans submitted varied from one-inch-to-one-hundred-feet to one-inch-to-four-hundred. The only plans bearing a New Hampshire surveyor's stamp were two purported corrections of an earlier survey, each showing only a fraction of the tract's perimeter. Although separate plans of septic systems showed contour lines,

they were prepared by Bonser's son, who is not a surveyor. Moreover, these plans related to only seven lots, whereas one large plan showed seventeen lots and the evidence indicated that nine lots were actually occupied

■ While this recitation hardly exhausts the application's deficiencies, the evidence described is enough to support the trial court's finding that the defendants failed to complete the application process, and our earlier description of the communications between Bonser and the town officers confirms the court's basis for a finding that the defendants' conduct was designed to confuse and delay the consideration of their application. We can tell from our own appellate review of the record just how confusing many of the submitted items are, and how time-consuming it must have been for the board to try to piece them together, once the town's repeated reminders and its motion for further contempt had succeeded in goading Bonser into taking some action.

Indeed, on the subject of confusing and dilatory conduct it is remarkable that Bonser refused all requests either to meet personally with the board, or to send a representative to help the board try to make sense of the materials submitted and to discuss their deficiencies as the board saw them. Bonser's explanation is that any requirement for an applicant to be represented personally at planning board meetings was unenforceable against him. He points to the fact that it was only in November, 1985, that the Regulations were amended to require personal representation at board meetings, *see* AMENDED REGULATIONS § III, whereas the order of May 23, 1985, conditioned purgation of contempt on "application . . . for all permits and approvals required by existing ordinances," which Bonser takes to mean existing on the date of the order.

■ Bonser's position reflects a total misreading of the May 23 order, however. The phrase "required by existing ordinances" modifies "permits and approvals." It makes no reference to the procedure required to apply for those permits and approvals. Hence, even if "existing" had reference to the order's date of May 23, it would not purport to excuse Bonser from compliance with procedural requirements added to the planning board's regulations. and made effective after that date. Conversely, even if the phrase "required by existing ordinances" did refer to procedural requirements, "existing" would most reasonably be read to refer to ordinances existing at the time of application for approval, not existing on May 23. Citizens have no general right to the contin-

uance even of prior substantive law, *Farnum's Petition*, 51 N.H. 376, 381 (1871), and nothing short of substantially detrimental reliance on the prior state of land use regulations will exempt a private party from burdens imposed by their subsequent amendment. *See Socha v. City of Manchester*, 126 N.H. 289, 291, 490 A.2d 794, 795 (1985); RSA 674:39. This law stands in stark contrast to Bonser's position, which seems to be that consistent defiance of an ordinance should establish a right to rely upon its terms as against all subsequent amendments.

Little more need be said to dispose of Bonser's remaining attempts to avoid the latest finding of contempt. First, he condemns the town for seeking equity with hands that are said to be rendered "unclean" by the town's failure to respond to his demand for a letter, specifying every detail in which the planning board claimed the applications were deficient. But Bonser points to no provision of the board's regulations requiring such a written bill of particulars, and in stressing his demand for written specification he of course ignores the board's repeated requests for a meeting with him or his representative, to discuss exactly what was missing from the application. Far from suffering from any unclean hands, the board, along with other town officials and town counsel, exhibited a degree of patience in dealing with Bonser that we can only admire.

■ ■ Next, Bonser attacks the validity of the order of May 16, 1986, finding him in contempt, because of Justice Nadeau's express refusal to entertain any motion for rehearing on the matters addressed, unless sought by both parties or mandated by this court. This provision in no way taints the order, however. The superior court's consideration of rehearing motions is not mandated, but is discretionary with the court, *Redlon Co. v. Corporation*, 91 N.H. 502, 505, 23 A.2d 370, 373 (1941). *See* SUPER. CT. R. 59-A (effective September 1, 1987); *but cf.* RSA 541:5 (action mandatory on rehearing motion filed as prerequisite to appeal from administrative agency). We perceive no abuse of discretion in this instance. Bonser's policy of seeking continual reexamination of issues previously decided, resulting in what our earlier opinion described as an avalanche of paper, surely justified the trial court in finding it overwhelmingly probable that a request for rehearing would simply be one more pointless strain on the system.

Nor do we find support for Bonser's position in the two State cases he cites, *State v. Chaisson*, 123 N.H. 17, 30, 458 A.2d 95, 102 (1983); *State v. Settle*, 123 N.H. 34, 37, 455 A.2d 1031, 1033 (1983), which hold merely that a trial court may not adopt a blanket policy of refusing to rule on the merits of an evidentiary issue subject to

discretionary judgment. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422 (1982), which he also cites, is likewise beside the point. That case held that due process barred a State from terminating a cause of action without hearing, simply because a State official, not a party to the action, had failed to satisfy some mandatory step in the statutory appeal procedure. The court adverted to the related rule of due process preventing a State "from denying potential litigants use of established adjudicatory procedurês, when such an action would be 'the equivalent of denying them an opportunity to be heard on their claimed right[s].'" *Id.* at 429–30 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 380 (1971)). Here, Bonser was given a full hearing; he was simply denied a wholly discretionary opportunity for rehearing, because of his repeated abuses of the adjudicatory process.

Nor is there any basis for Bonser to raise the judge's refusal to entertain any rehearing motion as a ground for demanding the judge's recusal from the case. Bonser made no such demand in the trial court in response to the May 21, 1986 order, *see Daboul v. Town of Hampton,* 124 N.H. 307, 471 A.2d 1148 (1983) (no appellate consideration unless issue raised below), and we have already noted that his later motion for the recusal of Nadeau, J., was the subject of our prior ruling, which did not require the judge's recusal as of May 16, 1986. There being no error of law or abuse of discretion in the order limiting the opportunity for rehearing, *see Dobson v. Staples,* 123 N.H. 102, 103, 456 A.2d 972 (1983), it is no predicate for relief.

Ironically, the remaining issues that Bonser seeks to raise here provide the occasion for a paradigm example of just the sort of abuse of judicial process that led Nadeau, J., to bar rehearing except on the parties' joint motion. Bonser asks for reversal of the contempt finding on the grounds (a) that the zoning ordinance is unconstitutional in providing the same lot size requirement for mobile homes as for other dwellings and in barring mobile home parks as such; and (b) that the defendants' use of their property is exempt from the subdivision requirements either as "rental" property or as "grandfathered" land use. In asserting these positions, however, Bonser once again refuses to accept the determination of this court, over four years ago, that review of a contempt finding does not entitle him to make a non-jurisdictional collateral attack on the original order, as to which he stands in contempt. *Bonser,* 124 N.H. at 810, 481 A.2d at 532. He simply will not face the fact that the period for appealing the order of June 10, 1982, is over.

It is over, however. The 1982 order stands, as does the 1986 finding of contempt and the 1985 award of attorney's fees. Unfortunately, the condition of stalemate still remains, as well, and on remand of this case to the trial court every effort must be made to end the litigation.

It is clear, of course, that no court will ever convince Bonser of his errors in believing that the State and National Constitutions provide, or should be interpreted to provide, opportunities for jury trials in equitable enforcement proceedings and in adjudications of civil contempt. It is no more likely that he will ever accept zoning regulation as constitutional, or voluntarily comply with the existing court order. In the absence of some fresh approach to the problem of compliance, therefore, the future will probably hold nothing more than further cause for Bonser's incarceration and mounting fines for continuing contempt, until the economic value of the land in question has been entirely exhausted (assuming it is not exhausted already) and a sale of the entire tract is requested to pay the accumulated fines.

Although we can understand why the town might prefer to let that happen, it is not the proper business of municipalities to profit from violations of their land use regulations, or the proper business of the judiciary to allow them to do so, if there is any reasonable way to end the violation giving rise to the fines. For that matter, the judicial system has a vital interest in bringing such violations to speedy conclusions, as this case illustrates appallingly well. The amount of judicial time expended thus far without eliminating a scintilla of the underlying violation is now beyond calculation.

It does not appear, however, that the town and the judiciary are subject to the defendants' option to continue the stalemate. On four occasions the superior court has issued orders authorizing the town to enter the property and remove the mobile homes at the defendants' expense, and thus to bring the violations to an end. In the first and second instances, under the orders of June, 1982, and February, 1983, the town took no action. Under the third order, of May 23, 1985, which would have required the town to act by a time certain, the town's authority was preempted by Bonser's undertaking to make the applications he had previously refused to file. At the present time a fourth order, of May 21, 1986, again authorizes the town to act, but without imposing any obligation that it do so. The time has surely come, however, to impose such an obligation.

On remand, therefore, the superior court should not confine its attention solely to the imposition of further penalties for contempt and enforcement of the penalties that have accrued. The

court should also forthwith issue notice to the parties, and to third parties with interests in the mobile homes, to appear for hearing to determine when and under what conditions the town will be required to enter the property to remove the mobile homes at the defendants' expense, failing which the original order of June 10, 1982, will be vacated.

*Affirmed and remanded.*

All concurred.