Bonser, et al. v. Nottingham          CV-96-343-M    03/28/97
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Terry L. Bonser; Mary L. Parks Bonser;
and Cedar Waters Village Partnership,
        Plaintiffs,

        v.                                   Civil No. 96-343-M

Town of Nottingham, NH, et al.,
        Defendants.


                           O R D E R


        After hearing, the court denied the judicial defendants'

motion to dismiss, without prejudice, at this juncture.

        Plaintiffs seek an injunction to prevent execution against

their property by the Rockingham County Superior Court and Town

of Nottingham, in the latest episode of a fifteen year series of

legal skirmishes arising from a zoning dispute between members of

plaintiffs' family and the Town of Nottingham.  Basically,

plaintiffs contend that no judgment has ever been entered against

them and, therefore, the state and town are attempting to seize

their property without having first afforded them due process of

law, in violation of the Fourteenth Amendment (incorporating the

takings clause of the Fifth Amendment) of the United States

Constitution.

        Unfortunately, however, the merits of the claim to

injunctive relief cannot be adequately addressed by the court

because of the confusing procedural background of the many state legal proceedings involving plaintiffs or members of their family, the incomplete record here, and the parties' failure to present the pertinent facts. This court believes that it would be most prudent to stay further action here for a period of ninety days, or more if necessary, to permit the parties to seek to reopen the case in state court in order to clarify a number of predicate issues.

Once the confusing pleadings and submitted documents are sorted through, plaintiff Cedar Waters Village Partnership seems to have a straightforward claim. The partnership says that it owns property previously owned by Cedar Waters Village, Inc. (CWI) and Robert A. Bonser (Bonser), and that the various named defendants, or at least some of them, are attempting to take their property by writ of execution in order to pay certain contempt judgments previously entered by the New Hampshire Superior Court against Bonser and CWI, all in violation of the due process protections afforded them (the partnership and its partners) under the United States Constitution.

A clear and comprehensive recitation (up to that point) of the convoluted history of the Bonser family's dispute with the Town of Nottingham is found in <u>Town of Nottingham v. Robert A. Bonser and Cedar Waters Village, Inc.</u>, 131 N.H. 120 (1988)

2

(Souter, J.). In that opinion Justice Souter made it clear that the contemnors in the case were Robert Bonser and CWI:

> On four occasions the superior court has issued orders authorizing the town to enter the property and remove the mobile homes at the defendants' [Bonser and CWI?] expense, and thus to bring the violations to an end. In the first and second instances, under the orders of June, 1982, and February 1983, the town took no action. Under the third order of May 23, 1985, which would have required the town to act by a time certain, the town's authority was preempted by Bonser's undertaking to make the applications he had previously refused to file. At the present time a fourth order, of May 21, 1986, again authorizes the town to act, but without imposing any obligation that it do so. The time has surely come, however, to impose such an obligation.

> On remand, therefore, the superior court should not confine its attention solely to the imposition of <u>further penalties for contempt and enforcement of the penalties that have occurred.</u>

<u>Nottingham</u>, 131 N.H. at 137 (emphasis added).

The only penalties for <u>contempt</u> that had accrued as of Justice Souter's writing appear to have been penalties imposed upon Robert Bonser and CWI (not upon Cedar Waters Village Partnership (CWVP)).

The next year, 1989, the New Hampshire Supreme Court considered yet another issue in the Bonsers' ongoing battle with Nottingham. Setting the factual stage in <u>Nottingham v. Bonser</u>, 132 N.H. 68 (1989), Justice Thayer described the following

3

sequence of events. In March of 1987, the plaintiff Town of Nottingham apparently filed a petition to attach property owned by Robert A. Bonser and Cedar Waters Village, Inc., to cover fines accrued and accruing against them for continuing violations of the 1982 and 1986 contempt orders (adding support to the notion that only Bonser and CWI had been determined to be contemnors, and that penalties had accrued only against them). The Supreme Court further referenced the fact that in May of 1987 (presumably before any attachment order was issued), CWI was liquidated and the subject property was formally conveyed to Robert A. Bonser and Mary L. Bonser as joint tenants. Then, again apparently before any attachment order was issued (although defense counsel could not say whether a prejudgment attachment ever issued, some defense counsel thought one might have), Robert and Mary L. Bonser further conveyed the real estate to a general partnership called Cedar Waters Village Partnership (CWVP). The Supreme Court further related that in June of 1987, presumably after the second conveyance, the Superior Court granted a petition for attachment of the property that had been filed by the town. No copy of the attachment order has been filed with this court, and the state defendants do not seem to rely upon it to justify the writ of execution relative to the contempt assessments.

4

After that June attachment order was issued, the Town of Nottingham apparently filed a motion to set aside the conveyances as fraudulent. In May of 1987 Cedar Waters Village Partnership, as the new owner of the property, attempted to intervene in (apparently) the contempt proceedings against Bonser and CWI. After a few setbacks, and further Supreme Court review, the individual partners of CWVP were granted permission to appear pro se in that litigation, for the purpose of protecting their collective interests in the real estate held in partnership name. Nottingham, 132 N.H. at 74. Robert Bonser subsequently died, and as the Supreme Court points out "survivorship is one of the incidents of a tenancy in partnership. See RSA 304-A:25,II(d) (deceased partner's right in specific partnership property vests in surviving partners)." Id. CWVP says, however, that no one filed any claims against Bonser's estate and the estate has been fully resolved and its assets distributed. Whether Robert Bonser's interest in the partnership property passed to the surviving partners subject to an attachment remains unclear.

In 1990, the Supreme Court again had occasion to address the Bonser situation upon cross appeals by the town and the tenants of Cedar Waters Village, both challenging the Superior Court's Sept. 22, 1989, order permitting the tenants to apply for permits for the mobile homes located on the subject property. In an

unpublished order, dated March 2, 1990, the New Hampshire Supreme Court again attempted to resolve the years of litigation between the town and the Bonsers. The order refers generally to "defendants," issues several directives regarding removal of the offending mobile homes from the subject property, and also refers to its prior opinion in Town of Nottingham v. Bonser, et al., 131 N.H. 120 (1988) with respect to "authorizing agents of the town and supporting personnel `to enter the property to remove the mobile homes [within a reasonable time] at the defendants' expense,' Town of Nottingham v. Bonser, et al., supra, at 138, unless the defendants shall previously have effected the removals and terminated the violations." Town of Nottingham v. Bonser, et al., No. 90-001, slip op. at *3 (N.H. Supreme Ct., Mar. 2, 1990). The Supreme Court, in that same order, directed:

> 4. That following removal of the mobile homes the Superior Court promptly issue notice of such proceedings as may be necessary to calculate and determine appropriate penalties for the defendants' contempt, and, after hearing the parties and setting such penalties, issue orders for enforcement of the same.

Id.

It is unclear to whom the Supreme Court referred as "defendants." It is possible, and the state seems to argue (but only by reference to the plaintiffs' own pleadings in this federal case), that "defendants" included CWVP, and Mary L.

6

Bonser and Terry L. Bonser as partners.  But, it is by no means clear from the record presented in this court that either the partnership, or Terry L. Bonser, or Mary L. Bonser had previously been held in contempt or had penalties assessed against them or their partnership.

It is entirely possible, of course, that the Superior Court in fact promptly issued notice of proceedings to be held to "calculate and determine, appropriate penalties," for the "defendants'" [including Mary L. Bonser, Terry L. Bonser, and CWVP] contempt, and, that after giving CWVP and Mary and Terry L. Bonser an opportunity to be heard, the Superior Court set "penalties" and issued "orders for the enforcement of the same." This record, however, does not show that any such proceedings were held or any such orders were issued.  Counsel for the state defendants points out that the record is voluminous and disorganized — which it no doubt is — but absent some showing of unequivocal legal justification, it is difficult to see how the state can seize the property of private citizens, especially to pay the obligations of others.

In 1992, the Supreme Court again considered an appeal from the Superior Court's latest order relative to the Bonsers' difficulties, and, in an unpublished order, remanded the matter back to the Superior Court for a decision as to whether or not a

fine previously imposed by the Superior Court (related to the prior contempt finding?) remained equitable and fair in view of the character and magnitude of the harm threatened by the "defendants'" failure to remove the mobile homes and the "defendants'" financial resources and the consequent seriousness of the sanction's burden. Town of Nottingham v. Bonser, et al., No. 90-424, slip op. (N.H. Supreme Ct., Nov. 18, 1992). Upon remand, the Superior Court was directed to award the plaintiff town all of its costs and attorneys' fees associated with this matter as a compensatory sanction and was further directed to impose an appropriate fine, supported by findings, payable to the court, as a result of the coercive sanction previously imposed. Id.

In December of 1993, the New Hampshire Supreme Court once again considered the Bonser matter, summarily affirming a decision by the Superior Court (no elaboration has been provided in the pleadings filed in this court). Town of Nottingham v. Bonser, et al., No. 93-556, slip op. (N.H. Supreme Ct., Dec. 13, 1993). It appears that in 1993, Terry L. Bonser and Mary L. Parks (now Bonser) also petitioned the United States Supreme Court for review of the matter (though what matter is unclear, i.e. including a contempt finding against them?), which petition was denied.

8

Finally, in 1996, it appears that the New Hampshire Supreme Court entertained a petition for original jurisdiction filed by Cedar Waters Village Partnership, and, on April 22, 1996, that court remanded the matter yet again to the Superior Court, continuing a stay of the writ of execution previously issued by the Superior Court until such time as the Superior Court corrected some obvious errors in the writ of execution, and further providing that its stay would automatically vacate upon corrective amendment of the writ of execution. Town of Nottingham v. Bonser, et al., No. 96-087, slip op. (N.H. Supreme Ct., Apr. 22, 1996). Apparently the writ of execution was amended, and the parties (Town of Nottingham and Superior Court) seek to enforce that amended writ of execution.

The record in this court does not show when, or even if, CWVP was provided the process ordered by the New Hampshire Supreme Court on March 2, 1990. Obviously, if CWVP was held in contempt after proper notice and an opportunity to be heard, and if sanctions were imposed, then its property is subject to appropriation in order to satisfy the penalties imposed upon it. If not, then this court has serious misgivings about the state's effort to seize its property. As stated, the parties' submissions are incomplete and unenlightening and, of course, this court does not have access to the Superior Court's complete

9

record, so it cannot assume the burden of reviewing that record itself. In addition, the following pertinent questions arise from the pleadings:

1.  Did the referenced fraudulent conveyance action instituted by the Town of Nottingham in 1987 proceed to judgment?

2.  Did the attachment order issued in June of 1987 relate back to March of 1987 so as to serve as a valid writ of attachment on the property?

3.  Were CWVP and its individual partners adjudged to be contemnors? If so, what if any penalties were assessed against them?

4.  Are CWVP and its partners being required to pay penalties actually imposed only on Robert Bonser and CWI?

5.  Were other writs of attachment issued and did they relate back to a point before the conveyance to CWVP was effected?

6.  Were CWVP, its individual partners, or Robert Bonser's estate, ever substituted as parties in the litigation in place of Robert Bonser after Robert Bonser's death?

These issues, and others, have been discussed at length during two separate hearings, without much progress in eliciting the pertinent facts or applicable law. Although the court believes it is empowered, under appropriate circumstances, to

10

issue injunctive relief to prevent state seizure of CWVP's property by writ of execution, the court finds that the facts are insufficiently developed to support such judicial action, and, what facts have been presented to date support neither the granting nor denial of injunctive relief at this stage. However, the state defendants, through counsel, are in a position to easily resolve any doubt about the facts by providing appropriate relevant references to the Superior Court docket, and the applicable law under which they purport to act, or, the parties can obtain necessary interpretation or clarification of Superior Court orders and records from that court.

If it appears that these defendants, CWVP and Mary L. Bonser and Terry L. Bonser, are being required to pay judgments entered against Robert A. Bonser and CWI, with property now belonging to them, and if the state or town did not obtain a valid attachment prior to the conveyance, and if no judicial determination of fraudulent transfer of the property has been made (to permit seizure of the property as Bonser's and CWVI's), then serious constitutional questions likely arise.

At the most recent hearing, it was generally resolved that the best way to handle this matter, given the incomplete record before this court, and counsels' lack of detailed familiarity with the voluminous Superior Court record, would be to permit the

11

plaintiffs 90 days in which to seek clarification from the Superior Court as to what their status is or was as to the state contempt proceedings. This case will be held in abeyance until that effort is made, because notions of comity and courtesy strongly militate in favor of first affording the Superior Court a reasonable opportunity to review, interpret, and declare the meaning of its own records and orders, before this court presumes to do so. The defendants have informally agreed to defer execution efforts until the matter can be sorted out.

The Attorney General has suggested that if that course is to be followed, then the plaintiffs ought to seek clarification by filing a pleading designed to reopen their previous litigation in the Superior Court, rather than by initiating new litigation. Plaintiffs agreed to proceed in that manner.

Upon receipt of clarification from the New Hampshire Superior and/or Supreme Court as to the existence or status of a judgment entered against these plaintiffs, or the amenability of their property to satisfy judgments properly entered against other persons or entities, this case ought to be easily disposed of, either because it will be subject to dismissal (these plaintiffs having received full due process in this matter as required by the United States Constitution) or, the case will likely be moot, i.e. should the New Hampshire courts find that

12

these particular defendants and their property are not subject to the writ of execution.

The parties will each report, separately, the status of their efforts to clarify the procedural record on July 1 and September 1, 1997, or before if the matter is either resolved or terminated in the Superior Court.

**SO ORDERED.**

                                       _____
                                       Steven J. McAuliffe
                                       United States District Judge

March 28, 1997

cc:   Terry L. Bonser
      Mary L. Parks
      William A. Dewhurst, Esq.
      William G. Scott, Esq.
      Christopher P. Reid, Esq.
      Michael R. Mortimer, Esq.
      Douglas N. Steere, Esq.
      Rockingham County Superior Court (courtesy copy)