Merrimack
No. 86-317

## THE STATE OF NEW HAMPSHIRE

v.

## JOHN A. SETTLE, JR.

March 6, 1987

172

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for the State.

*John A. Settle, Jr., pro se.*

*Brown and Nixon P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for the New Hampshire Bar Association, as *amicus curiae.*

SOUTER, J. The State appeals an order of the Superior Court (*DiClerico,* J.) insofar as it would permit the defendant to represent an unincorporated association of which he is an officer, although he has not been admitted to the practice of law. We reverse.

This appeal does not mark the defendant's first appearance as a party in cases decided by this court. *See,* in chronological order, *Settle v. Keene Savings Bank,* 120 N.H. 827, 423 A.2d 986 (1980) (affirming summary judgment entered against the present defendant in his quiet title action against mortgagee in possession after foreclosure); *Settle v. Settle,* 121 N.H. 397, 399, 430 A.2d 172, 173–74 (1981) (affirming order of contempt entered against the present defendant in divorce action, and finding that his legal position was "simply a sham designed to interfere with the orderly process of litigation"); *State v. Settle,* 122 N.H. 214, 447 A.2d 1284 (1982) (reversing defendant's convictions for receipt of, and conspiracy to receive, stolen property); *State v. Settle,* 123 N.H. 34, 455 A.2d 1031 (1983) (reversing convictions for theft and conspiracy to receive stolen property); *State v. Settle,* 124 N.H. 832, 480 A.2d 6 (1984) (affirming order directing defendant to produce documents for examination by attorney general in course of inquiry into defendant's alleged unauthorized practice of law); *State v. Settle,* 127 N.H. 756, 512 A.2d 1083 (1986) (affirming conviction for shoplifting). In addition to the published opinions in these cases, the court's records include an order in a recent extradition contest, which revealed that a grand jury of the State of Maine has indicted the defendant for theft. *See Settle v. State,* No. 85-219 (Feb. 3, 1986); *see also Settle v. State,* No. 86-182 (filed May 5, 1986); *Settle v. Supreme Court of New Hampshire,* No. C-86-81-D (D.N.H. filed June 19, 1986). (This is not the only criminal action pending against him. In the superior court of this State six indictments currently charge the defendant with welfare fraud. *See State v. Settle,* Nos. 85-S-657-F through 85-S-662-F (Merrimack Super. Ct. Oct. 17, 1986).)

Nor do these citations exhaust the record of the defendant's frequent contacts with the judicial system or with this court. In *State v. Dukette,* 127 N.H. 540, 543, 506 A.2d 699, 702 (1986), we noted that the public defender had resisted Dukette's insistence that Settle be allowed to participate in preparation for the trial of the case. The defendant also has filed appearances on behalf of himself and others in a number of cases now pending here. *See, e.g., Town of Farmington v. Settle,* No. 85-485 (filed Oct. 29, 1985); *Town of Nottingham v. Robert A. Bonser and Cedar Waters Village, Inc.,* No. 86-005 (filed Jan. 6, 1986); *Town of Nottingham v. Robert A. Bonser and Cedar Waters Village, Inc.,* No. 86-255 (filed June 20, 1986); *Town of Not-*

*tingham v. Robert A. Bonser and Cedar Waters Village, Inc.*, No. 86-293 (filed July 16, 1986). The defendant has, moreover, candidly admitted his intention to continue to file appearances on behalf of an unincorporated association known as the New Hampshire Civil Rights Association (NHCRA), of which he is ostensibly an officer.

Despite the impression raised by the number of such appearances filed in the past and anticipated in the future, the defendant is not now admitted to the practice of law in this or any other jurisdiction, nor has he ever been. It was in fact the defendant's frequent practice of performing legal services for others that led to the institution of this suit in 1984, when the State petitioned under RSA 311:7-a, I, for an injunction against the defendant's unauthorized practice of law in violation of RSA 311:7. By order of March 12, 1985, the superior court enjoined him

> "from rendering, offering to render, or holding himself out as rendering to any other person . . . any service requiring the use of legal knowledge or skill, whether in court or out of court, and from representing himself to any other person as a lawyer, attorney, or attorney-in-fact in the practice of law, within the State of New Hampshire [, and] from appearing before any State court or any administrative body within the State of New Hampshire on behalf of another person if he is acting as that person's legal representative, attorney-in-fact, or is in any way providing that person with a service that requires the use of legal knowledge or skill."

Other provisions of the injunction specifically prohibited the preparation of pleadings, notices and briefs on behalf of any other person, and a footnote clarified the scope of the injunction by defining "person" to include "any natural person, corporation, association, whether incorporated or not, and any organization of any kind."

Thereafter, in apparent violation of the injunction, the defendant filed an appearance on behalf of NHCRA in *Town of Farmington v. Settle supra*. When this court *sua sponte* struck the appearance in accordance with the terms of the injunction quoted above, the defendant moved for reconsideration based on a stenographic record of remarks by the trial judge. That transcript indicated that the defendant might appear on behalf of a corporation of which he was an officer, if so authorized by that organization. This court thereupon referred the question of the scope of the injunction to the judge who had issued it, for determination after a hearing.

The trial court reported on April 11, 1986, that

"[t]he permanent injunction issued by this Court prohibiting Mr. Settle from the unauthorized practice of law was not intended to prohibit him from representing the interests of an unincorporated association of which he is an officer or director, assuming that he has been properly authorized by said association to act on its behalf."

This court viewed the report as an order amending the terms of the injunction as originally issued, and for convenience we will refer to it hereafter simply as the order of April 11. On May 22, 1986, after the expiration of the period for appealing the order, *see* SUPER. CT. R. 74, we granted the defendant's earlier motion to reconsider filed in *Town of Farmington v. Settle supra,* and accepted his appearance on behalf of NHCRA.

On June 23, 1986, however, the State sought to enter *Farmington* as amicus curiae for the purpose of moving for reconsideration of our order of May 22, 1986. The defendant objected. Prior to our ruling on the State's request for amicus curiae status, the defendant filed appearances on behalf of NHCRA or a corporation, Cedar Waters Village, Inc., in the three cases cited above by our docket numbers 86-005, 86-255, and 86-293. The State moved to strike the defendant's appearance in each instance.

Because of the substantial issue about the appropriate scope of the trial court's injunction, we treated the State's request to appear as amicus in *Farmington* as a motion for late appeal from the superior court's order of April 11, and accepted the appeal. The New Hampshire Bar Association subsequently appeared as amicus curiae by leave of the court, and both the State and the Bar Association filed briefs and presented arguments urging reversal of the trial court's order of April 11. The defendant filed no brief and therefore waived oral argument under Supreme Court Rule 18(1).

We treat the appeal as raising two issues: (1) whether it was error to permit the lay defendant generally to represent an unincorporated association, and by analogy a corporation, solely because he is one of its officers or directors; and (2) whether any purpose would be served at this time by considering the defendant's qualifications to appear in specific cases as the attorney-in-fact of an association or corporation, in reliance on the provision of RSA 311:1 that a party may appear by any citizen of good character. *See* SUPER. CT. R. 14; SUP. CT. R. 33(2). We hold that the order of April 11 was erroneous in the respect challenged, and that the record demonstrates that the defendant could not now be qualified as an attorney-in-fact for another person or legal entity.

■ We rule the order of April 11 erroneous because it conflicts with the statutory prohibition against the unauthorized practice of law. *See* RSA 311:7. Under its terms the defendant may appear with unrestricted frequency on behalf of an association of which he is an officer, so long as the association authorizes him to represent it. The order would thus allow him to appear "commonly," *see Bilodeau v. Antal*, 123 N.H. 39, 44–45, 455 A.2d 1037, 1040–41 (1983), in violation of the prohibition of RSA 311:7 that "[n]o person shall be permitted commonly to practice as an attorney in court unless he has been admitted by the court and taken the oath prescribed. . . ." The statute provides no exception to this rule when the party to be represented is a corporation or unincorporated association.

The only legislative authority for legal representation by anyone who is not a duly licensed lawyer is RSA 311:1, which provides that "[a] party in any cause or proceeding may appear, plead, prosecute or defend in his proper person or by any citizen of good character." We do not believe, however, that either the "proper person" or the "citizen of good character" provision may be construed as authority for the order permitting the defendant to represent an association of which he is a member.

■ It is clear from the context of RSA 311:1 that "in his proper person" means "pro se" and refers to the direct personal conduct of litigation by a party on his own behalf. While the statute thus permits self-representation by an individual, it is not apparent how the language could be read to confer such a right upon an incorporated or unincorporated association, or upon an individual seeking to represent such an entity. A corporation is an artificial legal creature, *see State v. Luv Pharmacy, Inc.*, 118 N.H. 398, 404, 388 A.2d 190, 194 (1978), which ultimately can act only through the agency of a natural person. *Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2d Cir. 1983). *But see Shortlidge v. Gutoski*, 125 N.H. 510, 513, 484 A.2d 1083, 1085–86 (1984). It would therefore be a contradiction in terms to speak of a corporation's appearance in its proper person, within the meaning of the statute.

This analysis comports with centuries of historical precedent. Although the proponents of the statute as originally enacted in 1791 left no legislative history bearing on their intentions, there is abundant material indicating the limited extent of possible representation "in [one's] proper person" in the "sense [of that phrase] most obvious to the common understanding at the time of [the statute's] adoption." *Eisner v. Macomber*, 252 U.S. 189, 220 (1920) (citations omitted) (Holmes, J., dissenting).

At the time our statute was passed it had been clear from pub-

lished sources for the better part of two centuries that a corporation could not appear personally. *See* COKE, INSTITUTES, Bk. I ch. XIII, § 66b at 150–51 (J. H. Thomas ed. 1836); BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 196 (G. Chase ed. 1914 4th ed.). Such was the accepted doctrine in the early years of the Republic, when it was understood that a corporation could appear in court only by an attorney. *See* KENT, COMMENTARIES ON AMERICAN LAW, 270–71 (J. Gould ed. 1896 14th ed.); *Osborn v. United States Bank* 22 U.S. (9 Wheat.) 326, 366 (1824); *The Commercial and Rail Road Bank of Vicksburg v. Slocumb et al.*, 39 U.S. (14 Pet.) 60, 65 (1840).

Although we take this history as sufficiently indicative of legislative intent underlying passage of the statute, it is worth observing that the analysis expressed in the early sources is supported by the overwhelming weight of authority to this day. The leading modern federal case recognized the rule that a corporation may not represent itself and rejected challenges under the National Constitution and the anti-trust laws to the requirement that an attorney representing a corporation must be a lawyer duly admitted to practice in the courts. *Turner v. American Bar Ass'n*, 407 F. Supp. 451 (N.D. Tex. 1975), *aff'd sub nom. Pilla v. American Bar Association*, 542 F.2d 56 (8th Cir. 1976). The virtually unanimous authority for the requirement of professional corporate representation is exemplified in this federal circuit by *In re Los Colinas Dev. Corp.*, 585 F.2d 7, 11 (1st Cir. 1978), *cert. denied, sub nom. Schreibman v. Walter E. Heller & Co.*, 440 U.S. 931 (1979), and may be sampled in State decisions collected at Annot., 19 A.L.R.3rd 1073 (1968 & Supp. 1986). (*Los Colinas* is of further interest in noting the one case to the contrary that the First Circuit was able to find. *See Matter of Holliday's Tax Service, Inc.*, 417 F. Supp. 182 (E.D.N.Y. 1976), *aff'd sub nom. Holliday's Tax Services, Inc. v. Hauptman*, 614 F.2d 1287 (2nd Cir. 1979) (lay principal allowed to appear for a corporation where each was bankrupt and neither could afford a lawyer). We are aware of no other such exception involving a corporation.)

The reasons for requiring generally that a corporation's attorney must be a lawyer duly admitted to practice do not rest on any peculiarity of corporations. Those reasons

"are principally that the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the

> lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims."

*Jones v. Niagara Frontier Transp. Authority*, 722 F.2d 20, 22 (2nd Cir. 1983) (citation omitted).

■■ We reiterate that the source of the twin demands for practical competence and ethical responsibility is not merely a concern for the corporate party that might otherwise choose lay representation, but an obligation to the party opponent and to the broader public that would suffer from the effects of unskilled or unethical counsel. The surest, though admittedly not the foolproof, means to make good on that obligation is insistence on professional counsel admitted to practice and accordingly subject to the court's control. *See Bilodeau v. Antal*, 123 N.H. 39, 455 A.2d 1037 (1983). Hence we conclude that the legislature's "proper person" alternative to the general rule requiring professional representation before the courts was intended to be, and must remain, inapplicable to corporations.

■■ Its inapplicability to unincorporated associations is equally clear, though less frequently litigated. Such an association is merely a group of individuals voluntarily joined together to further a common purpose, *Shortlidge v. Gutoski*, 125 N.H. at 513, 484 A.2d at 1085, and it is generally without legal existence or significance apart from its constituent members. *Id.* Although it is deemed to be a corporation for purposes of dealing with grants and gifts, *see* RSA 292:13, :14, and may be treated as a partnership when profit is its members' objective in associating, *see* RSA 304-A:6, :7; *Shortlidge v. Gutoski, supra* at 513, 484 A.2d at 1086, its very nature as a collection of individuals necessarily and by definition precludes its appearance pro se by one individual.

We are aware of only one reported case taking a contrary view. In *United States v. Reeves*, 431 F.2d 1187, 1188–89 (9th Cir. 1970), the Ninth Circuit construed the provision of 28 U.S.C. § 1654, allowing personal appearance by a party, to permit a lay partner to appear on behalf of a partnership. Although the court reasoned that in representing the partnership he was representing his own interest, *id.* at 1188, this begs the relevant question, which is whether the partner was representing any one else at the same time. Because he was necessarily representing the other partners as well, the *Reeves* court was mistaken in its implicit conclusion that the one partner's appearance effected nothing more than personal representation. *Reeves* was an analytical sport, without persuasive claim to be followed.

On the contrary, authority elsewhere holds that a mere association must appear by licensed attorney, whether the association be treated simply as a collection of individuals, *see Church of New Testament v. United States,* 783 F.2d 771 (9th Cir. 1986), or as a partnership, *see First Amendment Foundation v. Vill. of Brookfield,* 575 F. Supp. 1207 (N.D. Ill. 1983). The reasons of logic and policy underlying these holdings are essentially the same ones we mentioned in discussing the requirements of corporate representation, and we therefore conclude that the statutory option of personal representation was likewise intended to be inapplicable to associations. (We thus construe the State statute consistently with the recent application of 28 U.S.C. § 1654 by the United States District Court for the District of New Hampshire, which refused to countenance the present defendant's appearance in that court on behalf of an unincorporated association known as "Industrial Metals Co." *See Alexander Jaroma, et al. v. Hooksett Police Department, et al.,* No. Civ. 86-328-D (D.N.H. Oct. 21, 1986).)

One caveat is in order, however. In construing RSA 311:1 as we have done, we do not foreclose the possibility that there is a narrow class of cases to which the general prohibition of RSA 311:7 itself was not intended to apply. Counsel before us have alluded, for example, to corporate small claims actions under RSA chapter 503, in which a lawyer's skill is not required and could be unduly expensive. Suffice it to say that we leave such a possibility for consideration on another day.

While the "proper person" language of RSA 311:1 is thus eliminated as authority for allowing the defendant's appearance, the "citizen of good character" provision remains a possibility in theory. *See* SUPER. CT. R. 14; SUP. CT. R. 33(2). In this case, however, the possibility is nothing more than theoretical. The trial court ignored it, and there are two obvious reasons why no purpose would be served by remanding the case to that court to consider recasting the April 11 order to rest on the good character option.

The first and most patent reason is the defendant's demonstrably bad character. Early in this opinion we called attention to reversals in 1982 and 1983 of two convictions for theft offenses; as the opinions in those cases indicate, however, the first reversal turned on an issue of standing under the evidentiary exclusionary rule, and the second rested on trial court error in refusing to allow the use of criminal records for impeachment of witnesses. In each case there was substantial evidence of the defendant's larcenous nature, which was confirmed in his most recent criminal appeal, wherein less than a year ago we affirmed his conviction for shoplift-

ing. While the time may come when the defendant should have a chance to demonstrate a change of character, providing that opportunity now would tend to confirm Mr. Bumble's judgment.

 The second barrier to allowing a good character appearance is that this statutory option merely provides an opportunity for lay counsel to appear in an individual case. It could not provide a blanket exception allowing lay counsel to file appearances as a matter of course, which is what the defendant candidly admits that he wishes to do, when he affirms his intention to appear for NHCRA as often as that association may care to resort to the courts. His desire is thus to appear "commonly" as a lawyer may do, *see* RSA 311:7; *Bilodeau v. Antal*, 123 N.H. at 44–45, 455 A.2d at 1040–41, and this the statute and rules forbid, whatever may be the character of the lawyer manqué.

Further proceedings to excuse the defendant from the general prohibition against lay representation would be unwarranted. We reverse the April 11 order permitting the defendant to represent a corporation or association and remand for such proceedings, if any, as may be necessary to enforce the injunction as originally issued. The clerk of this court will strike the defendant's appearances for NHCRA in Nos. 85-485 and 86-293, and for Cedar Waters Village, Inc., in Nos. 86-005 and 86-255.

*Reversed and remanded.*

All concurred.