**FRAASS SURVIVAL SYSTEMS, INC., Plaintiff,**

v.

**ABSENTEE SHAWNEE ECONOMIC DEVELOPMENT AUTHORITY and Absentee Shawnee Tribe of Oklahoma, Defendants.**

No. 91 Civ. 3705 (MJL).

United States District Court, S.D. New York.

April 1, 1993.

Barton Denis Eaton, White Plains, NY, for plaintiff.

Doyle & Bachman, Washington, DC by James D. Bachman, Scott W. Woehr, and Bass & Ullman, New York City by Robert Ullman, Steven Shapiro, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is the motion, dated October 28, 1992, of defendant Absentee Shawnee Economic Development Authority ("ASEDA") for withdrawal of its counsel of record, Doyle & Bachman, and its local counsel, Bass & Ullman. According to the motion, "ASEDA desires to proceed *pro se* in this matter." Def.'s Mot. for Withdrawal and Displacement of Attorneys of Record, at 1.

Plaintiff Fraass Survival Systems, Inc. ("FSS") opposes ASEDA's motion to withdraw for three reasons: first, that a corporation cannot appear *pro se*; second, that the motion is really an attempt to have a new law firm—designated in the motion as a recipient of correspondence—act as ASEDA's counsel although not admitted in this District; and third, that the motion is really an attempt to elicit sympathy from this Court in its evaluation of a pending Report and Recommendation.

## DISCUSSION

FSS's first objection is the most serious. It is well settled, as FSS points out, that a corporation cannot appear pro se. *See, e.g., Dow Chem. Pac. Ltd. v. Rascator Maritime, S.A.,* 782 F.2d 329, 336 (2d Cir.1986). This rule was extended to partnerships in the Second Circuit's most recent decision on the subject. *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305 (2d Cir.1991). Moreover, the *Eagle* court cited with seeming approval decisions of other courts extending the rule still further to cover additional types of unincorporated associations and organizations.

■ The problem with FSS's argument is that ASEDA is not a corporation, partnership, or unincorporated association, but an agency of the Shawnee tribal government. That presents a novel question: whether an Indian tribal government must be represented by counsel in this Court. There do not appear to be any precedents on point either in this circuit or elsewhere.

### A. Judicial Authority

An initial concern is whether the judiciary has any business fashioning rules in this area. The Second Circuit observed in the *Eagle* decision that courts have interpreted 28 U.S.C. § 1654, which ensures that individuals may appear pro se,[1] "to preclude a corporation from appearing through a lay representative." 926 F.2d at 1308. It is possible, then, that § 1654 not only guarantees pro se representation to individuals, but denies it to others. If that were the case,

---

1. Section 1654 states: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."

The Court in *Eagle* also quoted liberally from a New Hampshire Supreme Court decision by now-Justice Souter, finding that a New Hampshire statute not only permitted individuals to appear pro se, but also prevented corporations and unincorporated associations from doing so. *New Hampshire v. Settle,* 129 N.H. 171, 523 A.2d 124 (1987).

then the judiciary would lack discretion to permit pro se appearances by non-individuals.

There are, however, reasons to doubt that § 1654 has preclusive force with respect to all non-individuals. First, the Second Circuit's precedents are not absolutely clear. The Second Circuit's discussion in *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20 (2d Cir.1983), is in keeping with separate treatment of the statute (§ 1654) and the judicial rule (against pro se appearances by corporations): "Although 28 U.S.C. § 1654 (1976) provides that '[i]n all courts of the United States, the parties may plead and conduct their own cases personally or by counsel,' it is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se.*" *Id.* at 22 (citing cases that relied on judicial reasoning, not statutory interpretation). Thus, corporations are prevented from appearing pro se *despite* § 1654, not *because* of it.

Similarly, another Second Circuit decision affirmed a district court that found an exception to the rule against pro se corporate appearances. *In re Holliday's Tax Services, Inc.*, 417 F.Supp. 182, 183 (E.D.N.Y.1976) (sole shareholder of bankrupt corporation permitted to proceed pro se), *aff'd mem.*, 614 F.2d 1287 (2d Cir.1979). If § 1654 were definitive, then such judicial exceptions could

not be created.[2] The *Eagle* decision did not overrule these precedents, and is therefore best understood as holding merely that § 1654 does not guarantee partnerships the right to appear pro se, rather than as holding that § 1654 precludes partnerships and all other non-individuals from appearing pro se.[3]

A second reason to doubt that § 1654 precludes all non-individual pro se appearances is that the statute itself states no such thing. Section 1654 is a continuation of long-standing legislation permitting parties to conduct cases "personally,"[4] and only judicial interpretation has narrowed the statute's benefit to individuals.[5] It would require an extension of that judicial interpretation to hold that the statute precludes all non-individual pro se appearances. Although a court might reasonably interpret Congress's silence in enacting § 1654 as approval of the settled judicial rule against corporate pro se representation,[6] *see Evans v. United States*, — U.S. —, —, 112 S.Ct. 1881, 1890, 119 L.Ed.2d 57 (1992) (placing significance on "[t]he silence of the body that is empowered to give us a 'contrary direction' if it does not want the common-law rule to survive"), ratification by silence could not extend to unsettled (indeed unbroached) issues like the one before the Court.

This Court finds that the text of § 1654 certainly means that courts cannot *reject* pro se *individuals*, but that it does not deter-

2. Even the court in *New Hampshire v. Settle*, 129 N.H. 171, 523 A.2d 124 (1987), offset its strong position against pro se representation of groups with a caveat, leaving open "the possibility that there is a narrow class of cases to which the general prohibition of [the New Hampshire statute] was not intended to apply." *Id.*, 523 A.2d at 129.

3. Most of the cases characterized by the *Eagle* court as demonstrating preclusion did not, in fact, go so far. They either found the judicial rule to be unaffected by § 1654 or did not mention § 1654 at all.

4. Section 1654 dates back to a statute passed by the first Congress: "[I]n all courts of the United States, the parties may plead and manage their own causes personally or by the assistance of such counsel or attorneys at law as by the rules of the said courts respectively shall be permitted to manage and conduct causes therein." Law of Sept. 24, 1789, ch. 20, § 35, 1 Stat. 92 (1789).

5. *Compare First Nat'l Bank v. Bellotti*, 435 U.S. 765, 780 n. 15, 98 S.Ct. 1407, 1418 n. 15, 55 L.Ed.2d 707 (1978) ("It has been settled for almost a century that corporations are persons within the meaning of the Fourteenth Amendment.").

6. The judicial rule has deep roots indeed. *See, e.g., Commercial and Rail Road Bank of Vicksburg v. Slocomb, Richards & Co.*, 39 U.S. (14 Pet.) 60, 65, 10 L.Ed. 354 (1840); *Osborn v. President, Directors, and Co. of the Bank of the United States*, 22 U.S. (9 Wheat.) 738, 829–30, 6 L.Ed. 204 (1824); *In re Holliday's Tax Services, Inc.*, 417 F.Supp. 182, 183 (E.D.N.Y.1976) (citing *The Case of Sutton's Hospital*, 10 C. 23a, 32b, 77 Eng.Rep. 960, 973 (K.B.1613)). None of the early cases invoked § 1654's statutory predecessors as a basis for preventing a pro se corporate appearance. *See Commercial and Rail Road Bank of Vicksburg*, 39 U.S. (14 Pet.) at 65; *Osborn*, 22 U.S. (9 Wheat.) at 829–30.

mine for all other cases whether a court can *accept* pro se *non-individuals* when the court deems appropriate. Section 1654's guarantee that individuals may appear pro se does not control the question of whether an Indian tribal government may appear pro se. Whether Indian tribal governments can appear pro se is open to judicial exposition.

### B. Analysis

An appropriate starting point is the rationale used by courts to support the rule against pro se corporate appearances. Two grounds for the rule can be identified: first, that nonlawyers burden the system with poorly conducted proceedings; and second, that the interests of an association of individuals cannot be represented by any single member. The first ground was summarized as follows:

> [T]he conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court. The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative. In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities, *e.g.*, to avoid litigating unfounded or vexatious claims.

*Jones,* 722 F.2d at 22. But this offers no basis for distinguishing between individuals and groups. Unless the Court was questioning the wisdom of § 1654, the distinction rests on a second ground: that a single layperson cannot represent the interests of a group of people in the same way that a single layperson can represent his or her own interests. *Eagle,* 926 F.2d at 1308–10. On this ground, it is logically consistent to require that a group be represented by a lawyer, while permitting individuals to appear pro se.

Although these reasons will prevent most non-individuals from appearing pro se, there are exceptions. Thus, a sole shareholder was permitted to represent his corporation in bankruptcy, because "[t]o require [the] corporation to appear by a lawyer is effectively to exclude it and its shareholder from the courts." *Holliday's,* 417 F.Supp. at 183. *See also New Hampshire v. Settle,* 129 N.H. 171,

523 A.2d 124, 129 (1987) (suggesting exception in small claims court proceedings).

For purposes of the present case, it is critical to recognize the differences between groups like corporations on the one hand and Indian tribal government agencies on the other hand. One difference is quantitative; just in terms of sheer numbers there are many fewer Indian tribes than corporations and other associations. But more important are the qualitative differences; an Indian tribe's status is a distinctive combination of sovereignty and dependency—it is at once an independent nation and a ward of the state. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) ("Indian tribes are 'domestic dependent nations,' which exercise inherent sovereign authority over their members and territories.").

Indian tribal governments and their agencies do not fit well under the general rule against pro se representation by non-individuals, for several reasons. First, a tribe's status as a partially sovereign nation merits respect based on an expectation of responsible interaction with other sovereigns—particularly the United States. The rule for representation of sovereigns should not be fashioned from an assumption that they will engage in vexatious and unethical manipulation of our legal system.

Second, a tribal government and its agencies do not pose the problem of representation that corporations, partnerships, and other unincorporated groups pose. Lay representation of the latter is suspect because of the possibility of conflicting interests. *See Eagle,* 926 F.2d at 1310 (layperson was "[n]ot only ... representing other partners, general and limited, but his interests may [have been] incongruous with those partners."). A representative of a tribal government or agency, by contrast, has political authority to represent the interests of the group. Government representatives might not walk in lock step with each other or with their people, but their interests and differences are not personalized like those of business partners. Rather, government representatives must be presumed authoritatively to act in

the name of their government or agency, and thus in the name of the people whom they represent.[7] Requiring outside counsel to present a government's case because of concern about incongruity of interests would question the representative's legitimacy, and thus second-guess the status and operation of that government. Such injection of this Court into political affairs is needless.

Finally, the dependency relationship between Indian tribes and the United States is noteworthy, and justifies a bit more deference to the constraints of economic hardship than might be accorded in the case of a corporation. The dependency relationship does not entail an affirmative obligation to provide counsel, *see Rincon Band of Mission Indians v. Escondido Mut. Water Co.*, 459 F.2d 1082 (9th Cir.1972), but it does suggest that some degree of accommodation is in order. Corporations can be relieved of the duty to appear by attorney in appropriate economic circumstances, as the *Holliday's* decision demonstrates. The same must be true of Indian tribes, and as indicated, the deference should probably be greater. ASEDA asserts financial difficulty as the reason for its desire to relieve counsel, and the Court finds that to be a proper basis for withdrawal of counsel.

It is nevertheless important to this Court that litigation be conducted in an effective manner, and reconsideration of this decision will follow if ASEDA's pro se conduct works any injustice to the interests of FSS or the Court. The district judge in *Holliday's* took the same approach, reserving the possibility of "requir[ing] an attorney to appear for the corporation on pain of dismissal should [the bankruptcy judge] find that lay representation is causing a substantial threat of disruption or injustice, or should changed economic conditions make it possible for the corporation to obtain an attorney." 417 F.Supp. at 185. This Court finds that ASEDA is not barred from appearing pro se by the rule against pro se appearances by corporations

and partnerships; discretion is reserved, however, to order an appearance by counsel if the Court becomes convinced of that need.

FSS's second and third arguments in opposition to the motion for withdrawal are more easily disposed of. One of those arguments is a bare assertion that the motion is a disguised attempt to have non-local counsel represent ASEDA. The assertion is unsubstantiated, but even if proof were in the offing, it remains a matter of discretion whether non-local counsel shall be prevented from appearing. *See* General Rule 3(a), Joint Rules of the United State District Courts for the Southern and Eastern Districts of New York. The Court is not convinced that non-local counsel is attempting to make an inappropriate appearance in this case, and will not require appointment of local counsel at this time.

FSS's final argument is that the motion to withdraw counsel is a ploy to gain the Court's sympathy. That, too, is unsubstantiated and ineffectual. The Court is capable of objectivity.

### CONCLUSION

ASEDA's Motion for Withdrawal and Displacement of Attorneys of Record is hereby granted. ASEDA has designated the clerk of this Court as recipient of service, and has provided the following address to which the clerk shall mail papers in accordance with General Rule 3(b)(2) of the Joint Rules of the United States District Courts for the Southern and Eastern Districts of New York:

Mr. Michael Hackbarth
c/o Braly & Braly
201 West 14th
P.O. Box 2739
Ada, Oklahoma 74820
It Is So Ordered.

---

7. *Cf. New York v. United States*, —— U.S. ——, ——, 112 S.Ct. 2408, 2429, 120 L.Ed.2d 120 (1992) (equating a state's sovereignty with "responsibility to represent and be accountable to its citizens"). It may be true for most associations that their "very nature as a collection of individuals necessarily and by definition precludes [their] appearance pro se by one individual," *New Hampshire v. Settle*, 129 N.H. 171, 523 A.2d 124, 129 (1987), but application of the same statement to governments would border on anarchism.