Public Utilities Commission
No. 92-329

APPEAL OF CAMPAIGN FOR RATEPAYERS' RIGHTS
(New Hampshire Public Utilities Commission)

November 23, 1993

*Robert A. Backus*, of Manchester, and *Joshua L. Gordon*, of Concord (*Mr. Backus* and *Mr. Gordon* on the brief, and *Mr. Gordon* orally), for Campaign for Ratepayers' Rights.

*Broderick & Dean, P.A.*, of Manchester (*Mark W. Dean* and *Emily Gray Rice* on the brief, and *Mr. Dean* orally), for the New Hampshire Electric Cooperative, Inc.

*Jeffrey R. Howard*, attorney general (*Harold T. Judd*, senior assistant attorney general, on the brief and orally) and *Devine, Millimet & Branch, P.A.*, of Manchester (*Frederick J. Coolbroth* and *Anu R. Mathur* on the brief), for the State, as *amicus curiae*.

BROCK, C.J.    Campaign for Ratepayers' Rights (CRR) appeals an order of the New Hampshire Public Utilities Commission (PUC). The PUC denied CRR's request for a finding of eligibility for compensation under New Hampshire Administrative Rules, Puc Part 205 (Puc Part 205) and the Public Utilities Regulatory Policies Act of 1978, 16 U.S.C. §§ 2601–2645 (1978) (PURPA or act). The PUC also ruled that CRR was required to be represented by legal counsel to gain full intervenor status in the proceedings. We affirm.

In 1992, the New Hampshire Electric Cooperative (NHEC) filed a plan of reorganization in the United States Bankruptcy Court for the District of New Hampshire. The court approved the plan subject to affirmance of certain terms by the PUC. Accordingly, NHEC filed applications with the PUC for: (1) authorization of the financing of the reorganized company; (2) approval to sell the output of NHEC's interest in the Seabrook Nuclear Power Plant to the Public Service Company of New Hampshire (PSNH); (3) approval of a wholesale power purchase contract with PSNH; and (4) implementation of temporary and permanent rate increases.

The PUC held a prehearing conference, at which CRR filed a petition seeking intervention. CRR alleged that the proceedings were subject to the provisions of PURPA and Puc Part 205, and asked for a finding that its fees and expenses incurred in the proceedings would be eligible for reimbursement. The pleading was signed on CRR's behalf by its agent.

The PUC granted CRR's petition to intervene on a limited basis. Full intervention was conditioned on CRR retaining counsel. The PUC denied CRR's request for a finding of eligibility for compensation. CRR's motion for reconsideration was denied, and this appeal followed.

NHEC and the State urge dismissal of this case as moot, based on the fact that while this appeal was pending, the merits of the underlying case proceeded before the PUC. CRR neither appeared at any hearings, nor presented any written statements on the merits. The PUC approved NHEC's financing and power supply requests and

authorized rate increases. CRR filed a motion for rehearing, which was denied. CRR did not appeal to this court.

■ We need not decide whether the case is moot because, even if it were, there is sufficient public interest in this matter to warrant a discussion of the merits. *Silva v. Botsch*, 120 N.H. 600, 601, 420 A.2d 301, 301–02 (1980); *Proctor v. Butler*, 117 N.H. 927, 930, 380 A.2d 673, 674 (1977). We take this opportunity to delineate the requirements of PURPA and Puc Part 205. In doing so, we address only issues concerning CRR's claimed entitlement to PURPA funding and representation by a non-attorney.

CRR's petition to intervene and request for eligibility for compensation stated:

"This instant docket involves a number of PURPA purposes and standards as adopted by this Commission. CRR's intervention in this proceeding will address those PURPA issues, including but not limited to the following:

a) Conservation of energy supplied by electric utilities. PUC 205.01(c)(1)

b) Optimization of the efficiency of use of facilities and resources. PUC 205.01(c)(2)

c) Equitable rates to electric consumers, including CRR in consideration of PURPA title I, Subtitle B 113(b) as an Automatic adjustment clause. PUC 205.01(3)b2 [*sic*].

d) Equitable rates to electric consumers, including CRR members, in consideration of PURPA title I, Subtitle B 113(b)(3), information to consumers. PUC 205.01(c)(3)(b)(3)

e) Equitable rates to electric consumers, including CRR members, in consideration of PURPA title I, Subtitle B Standards that include the following Rate Making Standards:

(1) Cost of Service PUC 205.01(c)(3)(d)(1)

(2) Time of Day Rates PUC 205.01(c)(3)(d)(3)

(3) Interruptible Rates PUC 205.01(c)(3)(d)(5)

(4) Load Management Techniques PUC 205.01(c)(3)(d)(6)

(5) Lifeline rates PUC 205.01(c)(3)(d)(7)[.]"

In addition, the petition stated:

"CRR is not in a position to identify all positions it will take on the issues at the present time due in part to the financial

hardship CRR faces in participation for this proceeding. It is the position of CRR that in order to have equitable rates for consumers, promote the optimum efficiency of use of facilities, and promote conservation of energy suppl[i]ed by there [sic] must be changes in the initial request of NHEC. CRR also advocates an increase of information to customers to help them make wise decisions to further PURPA purposes."

The order denying CRR's request for eligibility for compensation concluded that "the Commission finds that CRR has made no showing that it is entitled to compensation under PURPA and/or the Commissions's [sic] rules, N.H. Admin. Rule Puc 205." The commission further stated:

"We do not find the NHEC rate case to be the type of matter for which PURPA compensation was designed. PURPA and N.H. Admin. Rules, Puc Part 205, were developed to enable the meaningful participation of consumer groups in cases in which PURPA standards were to be developed . . . . Although the NHEC rate case will undoubtedly involve issues which relate to the implementation of PURPA standards, we do not find that to justify PURPA compensation. CRR has failed to specifically identify an issue it intends to raise in these proceedings or any basis for its objection to the proposal to justify PURPA compensation."

We find neither CRR's nor the commission's position fully in accord with the requirements of PURPA or Puc Part 205.

Title I of PURPA was enacted by Congress to encourage conservation of electricity, maximization of efficiency in facility and resource use of electric utilities, and assurance of equitable rates to consumers. 16 U.S.C. § 2601 (1978); see Appeal of Concord Natural Gas Corp., 121 N.H. 685, 688, 433 A.2d 1291, 1293 (1981). The act requires state regulatory authorities to consider the adoption and implementation of six approaches to structuring rates: (1) cost of service; (2) elimination of declining block rates; (3) adoption of time-of-day rates; (4) promulgation of seasonal rates; (5) adoption of interruptible rates; and (6) use of load management techniques. 16 U.S.C. § 2621(d) (1978). PURPA has subsequently been amended to add four additional standards. See 16 U.S.C. § 2621(d) (Supp. 1993). The act also directs States "to consider promulgation of 'lifeline rates'—that is, lower rates for service that meets the essential needs of residential consumers—if such rates have not been adopted by November 1980." FERC v. Mississippi, 456 U.S. 742, 748 (1982).

The act provides that "any electric consumer . . . may intervene and participate as a matter of right in any ratemaking proceeding or other appropriate regulatory proceeding relating to rates or rate design which is conducted by a State regulatory authority . . . or by a nonregulated electric utility." 16 U.S.C. § 2631(a) (1978). The legislative history indicates that this section "creates a Federal right of participation and intervention in ratemaking proceedings." H.R. REP. NO. 1750, 95th Cong., 2d Sess. 63 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7797, 7815. The report specifies that state law is to define the nature and extent of consumer participation in ratemaking proceedings, while directing that "the State regulatory authority or nonregulated utility should provide maximum opportunity under State law to participate in ongoing proceedings." H.R. REP. NO. 1750 at 82, *reprinted in* 1978 U.S.C.C.A.N. at 7816; *see Robinson v. Department of Public Utilities*, 835 F.2d 19, 21 (1st Cir. 1987). In accordance with the directives of PURPA, the PUC considered and adopted the federal ratemaking standards. *See Re Compensation to Intervenors in Electric Ratemaking Proceeding*, 66 N.H.P.U.C. 332 (1981). Those standards are set out in New Hampshire Administrative Rule, Puc 205.01(d).

New Hampshire Administrative Rule, Puc 205.02 sets out the procedure by which a consumer is entitled to compensation for participation in PUC proceedings. The rule states:

> "(a) In *any commission proceeding* in which a consumer substantially contributes to the adoption by the commission, in whole or in part, of a position advocated by the consumer in that proceeding, *and relating to a PURPA standard*, or for judicial review of that proceeding, the utility shall pay the consumer an award of compensation if such award is granted by the commission in accordance with the procedures and requirements of this rule."

N.H. ADMIN. RULES, Puc 205.02(a) (emphasis added). The term "proceeding" is defined as "*any* application, case, investigation, rulemaking, or other *procedure of the commission in which a PURPA position is considered* subsequent to the effective date of PURPA." *Id.* 205.01(j) (emphasis added). The term "PURPA position" is defined as "a factual contention, legal contention, or specific recommendation promoting the [PURPA purposes of energy conservation, efficient use of facilities and resources and equitable rates to electric consumers with the consideration of one or more of the PURPA ratemaking standards]." *Id.* 205.01(c). The rules further es-

tablish that the commission shall grant a motion to intervene under circumstances specified in the rule. *See id.* 203.02.

■ The PUC's position that compensation for participation in proceedings is limited to the consideration and determination of PURPA standards, rather than the implementation of previously established standards, is at odds with the broad language of the rule, and we hold that it is incorrect. To the extent that a proceeding involves ratemaking, a consumer may intervene to raise consideration of the ratemaking standards.

■ The rules also establish, however, the procedure that must be followed to establish eligibility for compensation. CRR did not adequately comply with that procedure in this case. Rule 205.03 states:

> "In order to receive an award of compensation pursuant to Puc 205.02, the consumer shall file with the commission . . . a 'request for finding of eligibility for compensation' setting forth the following:
>
> . . . .
>
> (b) A statement of the PURPA issues which the consumer intends to raise in the proceedings, *together with a statement of the consumer's position on each such issue.*"

N.H. ADMIN. RULES, Puc 205.03 (emphasis added). CRR's petition simply recited the standards enumerated in Rule 205.01(d) without indicating its position on each PURPA issue it intended to raise. To comply with the express requirements of Rule 205.03, a consumer requesting a finding of eligibility for compensation must sufficiently establish that a factual or legal contention or specific recommendation promoting a PURPA policy will be raised and what position will be taken. Only then can the commission determine eligibility and whether other consumers "will advocate the same or similar positions with respect to any PURPA issue" for purposes of consolidation in compliance with Rule 205.06(c). N.H. ADMIN. RULES, Puc 205.06(c). The PUC did not err, therefore, in denying CRR's request for a finding of eligibility for compensation because CRR failed to sufficiently specify its position on each issue it intended to raise.

The PUC granted CRR's request for intervention but limited that intervention because CRR was not represented by an attorney. In support of its ruling, the PUC stated:

> "To the extent the proceeding is legislative and more informal, an attorney may not be necessary. Moreover, even during more formal evidentiary hearings, the CRR will have

the opportunity to participate through written and oral comment and the entry of sworn exhibits and testimony. However, should the participation include activities which clearly constitute the practice of law such as the filing of certain pleadings or objections and engaging in prolonged cross-examination, we conclude that the statutory restrictions on non-attorney representation compel the Commission to require the Association to obtain the assistance of licensed counsel."

CRR maintains that the structure and function of the PUC makes the requirement of an attorney inappropriate, and that the statutory provisions regarding the unauthorized practice of law do not apply. In addition, CRR contends that requiring an attorney as a condition of PUC intervention infringes on the constitutional rights of CRR's members. We will not address the constitutional issues because they were never raised in the proceeding below. *See Appeal of Campaign for Ratepayers Rights*, 133 N.H. 480, 484, 577 A.2d 1230, 1233 (1990).

■ The PUC is generally authorized to determine the qualifications of persons permitted to practice before it.

"Any person may appear before the commission in his own behalf, by attorney authorized to practice in this State, or by agent thereunto authorized in writing. . . . Nothing in these rules shall be interpreted in such a way as to permit the unauthorized practice of law; nor shall this rule in any way be construed to restrict or limit the right of any person to conduct his own representation with or before the commission."

N.H. ADMIN. RULES, Puc 201.03. The exercise of the commission's discretion is limited, however, by the strictures preventing the unauthorized practice of law. *See Bilodeau v. Antal*, 123 N.H. 39, 45, 455 A.2d 1037, 1041 (1983).

■ RSA 311:1 (1984) provides: "A party in any cause or proceeding may appear, plead, prosecute or defend in his proper person or by any citizen of good character." In *State v. Settle*, 129 N.H. 171, 176, 523 A.2d 124, 127 (1987), we construed the language "in his proper person" to mean *pro se* representation and "the direct personal conduct of litigation by a party on his own behalf." As such, *pro se* representation was held inapplicable to corporations and unincorporated associations. *Id.* at 178–79, 523 A.2d at 128–29.

■ In addition, we construed the "citizen of good character" provision of RSA 311:1 as "merely provid[ing] an opportunity for lay

counsel to appear in an individual case. It could not provide a blanket exception allowing lay counsel to file appearances as a matter of course." *Id.* at 180, 523 A.2d at 130. In accordance with RSA 311:1 and our decision in *Settle*, therefore, the commission may prohibit a corporation or unincorporated association from appearing before the commission *pro se*. The commission may, however, allow a citizen of good character to appear on behalf of a corporation or unincorporated association provided that citizen does "not intend to appear 'commonly' in violation of RSA 311:7." *New England Capital Corp. v. The Finlay Co.*, 137 N.H. 226, 228, 624 A.2d 1358, 1359 (1993). The PUC stated in its order that CRR's agent commonly appears before it on CRR's behalf.

■ RSA 311:7 (1984) provides: "No person shall be permitted commonly to practice as an attorney in court unless he has been admitted by the court and taken the oath prescribed in RSA 311:6." We disagree with CRR that RSA 311:7 only applies to proceedings in a court of law and not to an administrative agency adjudicative proceeding. Whether or not one is engaged in the practice of law depends upon the character of acts performed and not the place where he or she performs them. *See Denver Bar Association v. Public Utilities Commission*, 154 Colo. 273, 279, 391 P.2d 467, 471 (1964). "It is not the place, the forum or the status of the trier of fact and selector of law that determines whether what is done before him is the practice of law but rather the nature, character and quality of the acts and conduct." *Public Serv. Commission v. Hahn Transportation, Inc.*, 253 Md. 571, 584, 253 A.2d 845, 852 (1969).

■ It would be difficult to give an all-inclusive definition of the practice of law, and we will not attempt to do so. "[T]here is [no] single factor to determine whether someone is engaged in the unauthorized practice of law and, consequently, may be prohibited from undertaking the legal representation of another. That determination must be made on a case-by-case basis." *Bilodeau v. Antal*, 123 N.H. at 45, 455 A.2d at 1041. CRR's position that it ought to be permitted to intervene without restriction in the adjudicatory aspects of a commission proceeding is, however, untenable. *See* SELECTED OPINIONS OF THE ATTORNEY GENERAL OF NEW HAMPSHIRE 1987, No. 87-46, at 144–45 (Equity 1989). There is no dispute that public participation can add considerable value to commission proceedings, and the commission should ensure that such participation is maximized. Where, however, the conduct under scrutiny is congruent with well accepted, exclusively lawyer functions, that conduct cannot lawfully be per-

716

formed by a non-lawyer, albeit with good character, who appears commonly.

*Affirmed.*

All concurred.